Dan Stormer, Esq. [S.B. #101967]
Joshua Piovia-Scott, Esq. [S.B. #222364]
Cindy Pánuco, Esq. [S.B. #266921]
HADSELL STORMER & RENICK LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600/Facsimile:  (626) 577-7079
Emails: dstormer@hadsellstormer.com
           jps@hadsellstormer.com
           cpanuco@hadsellstormer.com

Lori Rifkin, Esq. [S.B. # 244081]
RIFKIN LAW OFFICE
P.O. Box 19169
Oakland, California 94619
Telephone: (415) 685-3591
Email: lrifkin@rifkinlawoffice.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

ESTATE OF MARK VASQUEZ PAJAS, SR., deceased, by and through ROSEMARY LOPEZ, as Administrator; ROSEMARY LOPEZ; YVETTE PAJAS; MARK PAJAS, JR.; JANEL PAJAS; XAVIER PAJAS,

              Plaintiffs,

vs.

COUNTY OF MONTEREY; SHERIFF STEVE BERNAL, in his individual and official capacity; KING CITY; KING CITY POLICE DEPARTMENT; CHIEF TONY SOLLECITO, in his individual and official capacity; OFFICER STEVE OROZCO, in his individual and official capacity; CALIFORNIA FORENSIC MEDICAL GROUP; CHRISTINA KAUPP; and DOES 1-20,

              Defendants.

Case No.:

**COMPLAINT FOR DAMAGES:**
1. Violations of Civil Rights (Fourth Amendment– Excessive Force)
2. Failure to Provide Medical Care (Fourteenth Amendment);
3. Failure to Protect from Harm in (Fourteenth Amendment);
4. Deprivation of Substantive Due Process (First and Fourteenth Amendments);
5. Medical Malpractice;
6. Failure to Furnish Medical Care;
7. Negligent Supervision, Training, Hiring, Retention;
8. Cal. Civil Code § 52.1;
9. Battery;
10. Wrongful Death;
11. Negligence.

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1.      Early in the afternoon on January 19, 2015, King City Police Officer Steve Orozco ("Orozco") observed 56 year old Mark Vasquez Pajas, Sr. ("Mr. Pajas") riding his bicycle on the wrong side of the street and initiated a traffic stop. When Mr. Pajas rode his bicycle on to the sidewalk to avoid the traffic infraction, Officer Orozco resorted to ruthlessly ramming Mr. Pajas with his police cruiser in order to execute his traffic stop. This caused Mr. Pajas to also collide with a chain-link fence and suffer injuries and leg swelling. Officer Orozco placed Mr. Pajas under arrest for alleged "reckless driving," transporting a controlled substance for sale, and resisting arrest. Officer Orozco then took Mr. Pajas to the Monterey County Jail, where he died in custody less than 24 hours later.

2.      Defendants King City, County of Monterey, Natividad Medical Center, and California Forensic Medical Group were aware that Mr. Pajas was a chronic heroin user and needed immediate treatment for detoxification while in the jail. At the time of his arrest, again when he was screened, and again when he was booked, Mr. Pajas reported his daily heroin use and immediately requested medication to detox. Notwithstanding the knowledge that Mr. Pajas presented a condition that required immediate and closely monitored medical attention, Mr. Pajas was not immediately placed in a sobering cell, or provided required medical attention. Monterey County had in place substandard policies and practices for identifying and treating newly-booked inmates for drug and alcohol withdrawal. Mr. Pajas's tragic death should not have happened —and would not have happened—if Defendants had fulfilled their duties as public safety and health care agencies and had in place policies and procedures that are standard in their fields and required by law.

3.      The Estate of Mark Pajas, Sr. and Mr. Pajas's wife and children,  bring this action for damages against Defendants for violations arising out of Defendants' violations of their civil rights, deliberate indifference and negligence that caused the

needless suffering and death of Mr. Pajas, and the grief and loss his wife and children now endure.

**JURISDICTION**

4.      This Complaint seeks damages for violations of the civil rights, privileges, and immunities guaranteed by the First and Fourteenth Amendments of the United States Constitution, pursuant to 42 U.S.C. §§ 1983 and 1988, and for violations of California state law.

5.      This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § § 1331 and 1343.

6.      This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1376, because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

**VENUE**

7.      Plaintiffs' claims arose in the County of Monterey, California. Venue therefore lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b) (2).

8.      Rule 3 of the Federal Rules of Civil Procedure and Local Rule 3-2(e) authorize assignment to this division because a substantial part of the events of omissions giving rise to Plaintiffs' claims occurred in Monterey County, which is served by this division.

**PARTIES**

9.      Plaintiff ROSEMARY LOPEZ, as Administrator of the Estate of MARK VASQUEZ PAJAS, brings this action pursuant to California Code of Civil Procedure §§ 377.10 *et seq*. At the time of his death, Mark Vasquez Pajas was a citizen of the United States and resident of the County of Monterey in the State of California. The survival causes of action in this matter are based on violations of Mr. Pajas's rights under the First and Fourteenth Amendments, and on violations of

California state law.

10.     ROSEMARY LOPEZ is the wife of Mark Pajas Sr. She is suing individually for violations of civil rights under the First and Fourteenth Amendments and California state law.

11.     PLAINTIFF YVETTE PAJAS is the eldest daughter of Mr. Pajas. She is suing individually for violations of civil rights under the First and Fourteenth Amendments and California state law.

12.     PLAINTIFF MARK PAJAS JR. is the eldest son of Mr. Pajas. He is suing individually for violations of civil rights under the First and Fourteenth Amendments and California state law.

13.     PLAINTIFF JANEL PAJAS is the youngest daughter of Mr. Pajas. She is suing individually for violations of civil rights under the First and Fourteenth Amendments and California state law.

14.     PLAINTIFF XAVIER PAJAS is the youngest son of Mr. Pajas. He is suing individually for violations of civil rights under the First and Fourteenth Amendments and California state law.

15.     Defendant COUNTY OF MONTEREY is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant County of Monterey operates and manages Monterey County Jail and is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Monterey County Sheriff's Department and Monterey County Jail, and each entity's respective employees and/or agents. Monterey County Sheriff's Department operates Monterey County Jail, and is and was responsible for ensuring the provision of emergency and medical services to all Monterey County Jail inmates.

16.     Defendant STEVE BERNAL is, and was at all relevant times mentioned herein, the Sheriff of the County of Monterey, the highest position in the Monterey County Sheriff's Department. As Sheriff, Defendant Bernal is and was

COMPLAINT FOR DAMAGES          -3-

responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all Monterey Sheriff's Department custodial employees and/or agents and Does 1 through 10. Defendant Bernal is and was charged by law with the administration of the Monterey County Jail, with the assistance of a small group of executive officers. Defendant Bernal also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Monterey County Sheriff's Department alleged herein were committed. Defendant Bernal is being sued in his individual and official capacities.

17.     Defendant KING CITY is a municipality duly organized and existing under the laws of the State of California. Defendant KING CITY POLICE DEPARTMENT is a duly formed agency of King City. Under its authority, Defendant King City is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the King City Police Department and its respective employees and/or agents. Defendant Steve Orozco, a King City police officer, assaulted Mr. Pajas with his car while Mr. Pajas was riding a bicycle and then arrested and detained Mr. Pajas on January 19, 2015.

18.     Defendant TONY SOLLECITO is, and was at all relevant times mentioned herein, the Chief of the King City Police Department, the highest position in the Department. As Chief, Defendant Sollecito is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all King City Police Department employees and/or agents and Does 11 through 15. Defendant Sollecito also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the King City Police Department alleged herein were committed. Defendant Sollecito is being sued in his individual and official capacities.

19.     Defendant STEVE OROZCO is, and was at all relevant times

1   mentioned herein, an Officer of Defendant King City's Police Department.

2   According to police records, Defendant Orozco hit Mr. Pajas with his police car,

3   arrested him on January 19, 2015, transported Mr. Pajas to Natividad Medical

4   Center for jail clearance, and then delivered him into the custody of officials at the

5   Monterey County Jail. Defendant Orozco is being sued in his individual and official

6   capacities.

7         20.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP

8   ("CFMG") is a California corporation headquartered in Monterey, California.

9   CFMG is a private correctional health care provider that services approximately 65

10  correctional facilities in 27 California counties. The County of Monterey contracts

11  with CFMG to provide medical, mental health, and dental services for the Monterey

12  County Jail. At all relevant times mentioned herein, CFMG was responsible for the

13  medical services provided to Mr. Pajas during his detention in the Monterey County

14  Jail.

15        21.     Defendant CHRISTINA KAUPP, RN is, and was at all relevant times

16  mentioned herein, a nurse employed by CFMG at the Monterey County Jail.

17  According to Mr. Pajas's medical records and investigative reports regarding his

18  death, Defendant Kaupp was one of the persons charged with Mr. Pajas's medical

19  care while he was in the custody of officials at the Monterey County Jail. Defendant

20  Kaupp did not take Mr. Pajas's vital signs while he was in jail. Kaupp also

21  dismissed Mr. Pajas when he told her he could not move and could not get up for

22  her to take his vitals at about 1:00 P.M. on January 20—one hour before he died.

23  Kaupp disbelieved Mr. Pajas's complaint that he was immobile because other

24  deputies had allegedly seen him walking earlier. Rather than treat Mr. Pajas's

25  inability to move a serious symptom requiring medical attention, Kaupp left Mr.

26  Pajas's cell without taking his vitals or providing him any medical attention.

27        22.     The true names and identities of Defendants Does 1 through 10 are

28  presently unknown to Plaintiffs. Plaintiffs allege that each of Defendants Does 1

---

COMPLAINT FOR DAMAGES          -5-

1   through 10 are custody and/or medical staff at Monterey County Jail who were

2   responsible for ensuring Mr. Pajas's safety and providing adequate health

3   treatment. Plaintiffs allege that each of Defendants Does 1 through 10 was

4   deliberately indifferent to Mr. Pajas's medical needs and safety, failed to provide

5   necessary medical care to him, violated his civil rights, wrongfully caused his

6   death, and/or encouraged, directed, enabled and/or ordered other defendants to

7   engage in such conduct. Plaintiffs further allege that Defendants Does 1 through 10

8   violated Plaintiffs' First and Fourteenth Amendment rights and rights under

9   California state law. Plaintiffs further allege that each of Defendants Does 1

10   through 10 was responsible for the hiring, screening, training, retention,

11   supervision, discipline, counseling, and control of medical, mental health, and jail

12   custody employees and/or agents involved in the conduct alleged herein.

13         23.     The true names and identities of Defendants Does 11 through 15 are

14   presently unknown to Plaintiffs. Plaintiffs allege that each of Defendants Does

15   11through 15 was employed by King City Police Department at the time of the

16   conduct alleged herein. Plaintiffs allege that each of Defendants Does 11 through

17   15 violated Mr. Pajas's civil rights, wrongfully caused his death, and/or

18   encouraged, directed, enabled and/or ordered other defendants to engage in such

19   conduct. Plaintiffs further allege that Defendants Does 11 through 15 violated

20   Plaintiffs' First and Fourteenth Amendment rights and rights under California state

21   law.  Plaintiffs further allege that each of Defendants Does 11 through 15 was

22   responsible for the hiring, screening, training, retention, supervision, discipline,

23   counseling, and control of the police department employees and/or agents involved

24   in the conduct alleged herein.

25         24.     The true names and identities of Defendants Does 16 through 20 are

26   presently unknown to Plaintiffs.

27         25.     Plaintiffs will seek to amend this Complaint as soon as the true names

28   and identities of Defendants Does 1 through 20 have been ascertained.

COMPLAINT FOR DAMAGES     -6-

26.     Defendants Steve Bernal, Tony Sollecito, and Steve Orozco and Does 1 through 20 engaged in the acts or omissions alleged herein under color of state law.

27.     Plaintiffs are informed and believe and thereon allege that at all times mentioned in this Complaint, Defendants were the agents, employees, servants, joint venturers, partners and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendants.

## EXHUASTION OF PRE-LAWSUIT PROCEDURES
## FOR STATE LAW CLAIMS

28.     All Plaintiffs timely filed governmental tort claims with Defendants County of Monterey, and King City including on behalf of the Estate of Mark Pajas Sr., on July 17, 2015.

29.     By various letters dated August 28, 2015 and addressing each tort claim in turn, the County of Monterey rejected all of the governmental tort claims filed by Plaintiffs.

30.     Likewise, in one letter dated October 27, 2015, King City rejected the tort claims filed by Plaintiffs.

31.     By correspondence dated July 30, 2015, Plaintiffs notified Defendants County of Monterey, Natividad Medical Center, CFMG, and Dr. Wasserman of their intention to file suit against them based on their negligence in providing professional health care services, as required by Section 364 of the California Code of Civil Procedure.

## FACTUAL ALLEGATIONS

**I.     History of Inadequate Medical Care in Monterey County Jail**

32.     The County of Monterey and CFMG have a policy and practice of failing to provide adequate medical care to inmates at Monterey County Jail, and are deliberately indifferent to the fact that their failure to do so subjects inmates to

1  substantial risk of unnecessary suffering, serious injury and death.

2         33.     The County of Monterey and CFMG have been on notice that their

3  provision of medical care to inmates is inadequate and results in needless harm

4  since at least 2007, when the Monterey County Sheriff's Office and the Monterey

5  County Board of Supervisors hired an outside consulting firm to perform a needs

6  assessment for the Jail.

7         34.     The independent assessment was updated in 2011 and found that the

8  County of Monterey and CFMG's medical/health treatment spaces are not adequate

9  for the rated beds and inmates held. (*See* Exhibit 1.)

10         35.     Moreover, the Assessment found that chronic understaffing hinders

11  County of Monterey's ability to provide medical care, classify and move inmates

12  within the facility, maintain inmate safety and security, and transport inmates to and

13  from outside agencies. (Exhibit 1 at G.1–G.3, J.2–J.3.)

14         36.     The County of Monterey and CFMG maintain insufficient numbers of

15  health care professionals to provide adequate care to the more than 900 inmates.

16  The available health care staff is insufficient to provide medical evaluations,

17  monitoring, and follow-up care to inmates who are suffering from serious and

18  chronic illnesses, or to treat inmates on an emergency basis.  (See Exhibit 1 at EX.

19  6-7).

20         37.     Moreover, as early as April 15, 2013, prior to Mr. Pajas's death, the

21  County of Monterey was again specifically put on notice of serious problems with

22  detoxification and sobering treatment in the jail by a letter written by class counsel

23  in the *Hernandez et. al. v. County of Monterey et al.* matter (Case No. 5:13-cv-

24  2354-PSG). *See* Exhibit 2.  *Hernandez* is a class action lawsuit seeking, *inter alia*,

25  injunctive relief to address conditions in the Monterey County jail that violate the

26  Eighth and Fourteenth Amendments, and the Americans with Disabilities Act. The

27  letter from *Hernandez* class counsel specifically objected to the fact that

28  defendants' agents and staff were employing a dangerous and punitive "detox

COMPLAINT FOR DAMAGES      -8-

protocol," refusing medications to inmates who then suffered from intense, untreated pain as well as powerful, dangerous and unnecessary withdrawal symptoms.

38.     Additionally, in 2014 and 2015, the Monterey County Civil Grand Jury undertook an inquiry into the condition and management of the Monterey County Jail and found numerous problems. Importantly, after auditing the Daily 24-Hour Files of Jail compliance for January 2015, the same month in which Mr. Pajas died, the Grand Jury Report found that "inmate health and welfare (safety checks) are frequently missed or skipped or not adequately documented." Exhibit 3. For example, the Grand Jury found that on January 14, 2015, jail staff missed or skipped welfare checks, and that some logs were incorrectly or falsely filled out, with checks being claimed when they were not done. Exhibit 3 (Excerpts of the 2014-2015 Monterey County Civil Grand Jury Final Report).

39.     In April 2015, the District Court presiding over the *Hernandez* matter found substantial evidence of practices at the jail that place detoxifying inmates at risk. Specifically, the court in *Hernandez* found the following deficiencies:

> Defendants use custody staff to perform intake screenings to identify those who might be at risk for withdrawal symptoms when they are first booked into the jail. While the jail's screening procedures do not specify who should decide if a newly admitted inmate should be placed in a sobering or detoxification cell, in practice custody officers also routinely make this decision. Medical staff is not responsible for initial evaluations and placement of persons into sobering or detoxification cells . . . [I]t is a "major problem" that correctional officers conduct intake screenings. "Officers are not trained to identify persons at risk for withdrawal, to evaluate persons who appear to be intoxicated, or to make medical decisions with respect to isolation for this purpose. This should be done by medical professionals [,] not custody officers.
> The jail does not reliably monitor inmates as they detoxify. Though Defendants' policy requires that nurses consult with a physician if a patient displays anyone of eight abnormal signs . . . this does not happen. Though [a neutral expert] was told that physicians are supposed to see all withdrawing patients within 24 hours, [the expert] found this also did not happen. [The expert] concluded, "alcohol and other drug withdrawal syndromes are managed by officers and nurses without physician supervision."
> . . . The jail also practices a single drug protocol for alcohol, benzodiazepine and opiate withdrawal, even though these are distinct

conditions requiring different medications and dosing periods for each. Under the protocol, nursing staff—not physicians—decide whether to medicate a withdrawing inmate. [A neutral expert] found that "[placing all individuals who are withdrawing into a single protocol will invariably result in inappropriate treatment for individual patients."
. . . CFMG's own policies provide that a nurse does not conduct an assessment until *after* custody staff has placed the inmate in the sobering cell and notified medical staff.

*See Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 948-51 (N.D. Cal. 2015).

40.    To address these deficiencies, the District Court issued a preliminary injunction in April 2015, and ordered the County to file a plan to remedy these, and many other constitutional and statutory violations. The Court ordered, in relevant part, that the County's plan should include these elements:

a. Medical staff shall timely conduct the initial evaluation to determine if an inmate is intoxicated and/or suffering from withdrawal or at high risk for withdrawal;

b. Medical staff shall make the decision on who should be placed in a sobering cell and who should be transferred to the hospital to be treated for possible or actual withdrawal;

c. Medical providers (physicians, physicians assistants, and/or nurse practitioners) shall be timely involved in assessing and treating inmates potentially undergoing withdrawal, and non-provider medical staff shall timely refer to providers those inmates undergoing withdrawals when clinically indicated;

d. Detoxifying inmates shall be adequately monitored using the CIWA protocol or equivalent validated monitoring protocol, shall receive pharmacological treatment as indicated and be appropriately housed based on their clinical conditions;

e. Defendants shall develop separate treatment protocols for opiate, alcohol and benzodiazepine withdrawal . ...

*Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 959 (N.D. Cal. 2015)

## II.    Mark Pajas's Arrest and Death

### A.    *Mark Pajas's Family History*

41.    Mark Vasquez Pajas, Sr. was born in 1958 in Salinas, California to a family of Philippino and Mexican farm workers. Mr. Pajas's father and mother provided for him and their eight children through jobs in the agriculture industry. Mr. Pajas's father picked grapes in the local fields and his mother sorted and

packaged potatoes. The family eventually moved to Greenfield, where Mr. Pajas and his eventual wife Rosemary Lopez met as teenagers.

42.     Mr. Pajas and Rosemary Lopez married in 1978, and together raised four children, Yvette, Mark Jr., Janel and Xavier. The family, including Mr. Pajas's mother and father, was very close and supportive of each other.

43.     Mr. Pajas began struggling with substance abuse as a teen. His battles with substance abuse resulted in multiple drug-related arrests and stints of incarceration from the time he was a youth through 2008. After his release from state prison in 2008, Mr. Pajas successfully remained out of prison and was able to be present for his children and grandchildren. Although his arrest record presented difficulties finding employment, Mr. Pajas wanted to provide for his family, and took whatever jobs he could find.  He did his best to shield his children and grandchildren from his substance abuse, and maintained strong relationships with his family despite his personal struggles. For example, the family made it a point of connecting over meals. Mr. Pajas normally had breakfast or lunch with his youngest son Xavier, and dinner with Rosemary and Xavier. Mr. Pajas spoke on the phone, or exchanged text messages, with his other children and grandchildren on an almost daily basis.

### B.    Mark Pajas's Arrest

44.     Mr. Pajas generally rode his bicycle every day to the local Denny's to pick up the Salinas, California newspaper.

45.     On January 19, 2015, while Mr. Pajas was riding his bicycle on this routine, Defendant King City Police Officer Orozco allegedly observed by Mr. Pajas riding in the opposite direction of traffic in violation of CV 21650 (traveling on the wrong side of the roadway). According to Orozco's Arrest Report, he verbally commanded Mr. Pajas to stop, and Mr. Pajas responded that he was just going to the bus stop and refused to stop.  Orozco reported that he pursued Mr. Pajas in his cruiser, and activated his overead emergency lights.

COMPLAINT FOR DAMAGES            -11-

46.     According to Orozco's police report, Mr. Pajas was no longer on the street, at the time of his stop. Defendant Orozco's pursuit of Mr. Pajas with his police car ended with Mr. Pajas crashing into a chain-link fence on his bike and sustaining injuries.

47.     On information and belief, Defendant Orozco used his police cruiser as a weapon to end the pursuit, driving up onto a sidewalk and slamming Mr. Pajas and his bike into a chain link fence.

48.     According to Defendant Orozco's Report, he maneuvered his police car onto the sidewalk to block the sidewalk onto which Mr. Pajas had ridden bicycle. Orozco claimed that Mr. Pajas attempted to ride his bicycle around Orozco's patrol car, and this caused Pajas to collide with a chain-link fence.

49.     Officer Orozco's arrest report claims that as a result of this collision, "Pajas was not hurt but he did have a medical problem which had caused his legs to swell up."

50.     After hitting Mr. Pajas with his car, Orozco arrested him at 12:12 P.M. Rather than call an ambulance or otherwise secure medical attention for Mr. Pajas, Orozco placed him in the back of his cruiser and transported him to the King City Police Department for booking.

51.     Mr. Pajas's booking photo, taken at 12:45 P.M., shows him in obvious distress with watery eyes, a flushed and sweaty face, and a pained expression. Despite Orozco's awareness that Mr. Pajas was experiencing leg swelling, and the obvious signs of physical distress, Orozco again did not secure immediate medical attention for Mr. Pajas at the King City station. Instead, Orozco placed him in a holding cell.

52.     Nearly four hours later, Orozco finally took Mr. Pajas to Natividad Medical Center. During Mr. Pajas's evaluation, Mr. Pajas informed Dr. Wasserman and the triage nurse that he was a regular heroin user that he had battled heroin addiction for many years and had successfully detoxed on numerous previous

occasions, and would need help for the withdrawal symptoms he expected during his incarceration. Dr. Daniel Wasserman examined Mr. Pajas and diagnosed him with cellulitis, leg swelling, and shortness of breath. Wasserman also noted that Mr. Pajas suffered "Congestive heart failure with not elevated BNP" and ordered in the discharge instructions that "If [Pajas] develop[s] chest pain or shortness of breath return to the ER immediately." With these instructions, Wasserman medically cleared Mr. Pajas for jail at 6:30 p.m.

### C.    County of Monterey's Denial of Medical Care Leads to Mr. Pajas's Death

53.    Orozco transported Mr. Pajas to Monterey County Jail, where the Monterey County Sheriff's Office ("MCSO") took custody of him at approximately 6:55 p.m. on January 19, 2015.

54.    During the Monterey County Sheriff's Office "Intake Health Screening" conducted by Deputy R. Silva at 6:55 P.M., Mr. Pajas reported that he used ¾ grams of heroin daily and had used heroin earlier that day.

55.    During the "Intake Triage Assessment" by the County's contracted health provider, Defendant CFMG, at 7:00 p.m., Mr. Pajas told staff he had used "a lot" of heroin "earlier today" and stated, "he is 'coming down' and needs meds to help him."  The CFMG medical staff noted that Mr. Pajas was to be placed on "opiate detox" and specified a series of medications to be taken throughout the following days. In addition to medication, Mr. Pajas's vital signs were to be checked throughout the day. Although this plan is recorded on a document titled "Doctors Orders," and Mr. Pajas presented with a condition that obviously required immediate and closely monitored medical attention, he does not appear to have ever been seen by a doctor in the jail.

56.    Moreover, Defendants policies and procedures do not actually have separate treatment protocols for opiate, alcohol and benzodiazepine withdrawal. Rather, their policies address only alcohol detoxification protocols, and apparently

1  assume staff will employ those in all cases of substance withdrawal.

2      57.    Under the County's deficient protocols, nursing staff—not

3  physicians—decide whether to medicate a withdrawing inmate. The protocols also

4  place the burden of assigning an inmate to a sobering cell on deputies who are not

5  medically trained. In accordance with this protocol, it appears Mr. Pajas was not

6  seen by a doctor at the jail, but rather nursing staff wrote "orders" for Mr. Pajas that

7  direct "Sick Call in 72 hours for re-evaluation," rather than close and immediate

8  evaluation.

9      58.    Defendants' policies also fail to specify the timeframe in which an

10  inmate requiring detoxification must be placed in a sobering cell. Although

11  Defendants were aware at the time of intake that Mr. Pajas was suffering

12  withdrawal from heroin and needed detoxification, housing records indicate that

13  they did not place Mr. Pajas in a sobering cell until approximately 4:17 A.M. on

14  January 20—more than nine hours after he was brought to the Jail.

15      59.    At 4:45 A.M., CFMG nursing staff finally assessed Mr. Pajas in the

16  sobering cell. Although the nurse reported that he had vomited in the cell, the nurse

17  failed to take his vitals. The next medical assessment documented in a

18  "Sobering/Safety Cell/Restraints Log" sheet, almost four hours later, at 8:30 A.M.,

19  noted Mr. Pajas was "laying on the cell floor" and that he "wants Gatorade." Again,

20  the nurse did not take any vital signs. In fact, the records reflect that another

21  patient's vital signs were actually erroneously listed on the records for Mr. Pajas's

22  8:30 A.M. check, and then crossed out with a notation reading "error wrong

23  [patient]."

24      60.    Defendants did not assess Mr. Pajas again until 1 P.M. At that time,

25  Defendant and Registered Nurse Christina Kaupp reported that Mr. Pajas was still

26  laying on the floor and "stated he can't move." However, Nurse Kaupp stated in her

27  report that she did not believe he could not move because deputies had allegedly

28  "witnessed [him] walking around cell moments prior."  Nurse Kaupp then left

1   without taking Mr. Pajas's vitals.

2      61.     In fact, although Defendants' policies require that an inmate-patient in

3   a sobering cell be checked by custody every 15 minutes, the logs for Mr. Pajas

4   show that between the hours of 4 A.M. and 2 P.M., deputies failed to conduct these

5   15 minute rounds.  Rather, there were intervals of up to 40 minutes between checks

6   by deputies.

7      62.     At approximately 2:12 P.M., one hour after Mr. Pajas reported to

8   Nurse Kaupp that he could not move, two MCSO deputies found Mr. Pajas face

9   down and unconscious in a pool of his own vomit.

10     63.     These deputies found Mr. Pajas not because they were performing the

11  required safety check every 15 minutes as required, but because they were

12  attempting to place another inmate into the same sobering cell. Their last check on

13  Mr. Pajas in Detox Cell No. 1, was over 20 minutes prior, at 1:49 P.M.

14     64.      Upon finding Mr. Pajas, rather than render immediate medical care,

15  the deputies escorted the second inmate into a different sobering cell. For the next

16  two minutes, all the deputies did was call out to Mr. Pajas to solicit a response.

17     65.     At approximately 2:16 P.M., another deputy arrived at Mr. Pajas's cell

18  and, according to Jail records, attempted to provide emergency aid to Mr. Pajas

19  until emergency medical personnel arrived at 2:21 P.M.

20     66.     At approximately 2:37 P.M., Mr. Pajas was transported to Natividad

21  Medical Center.  The "On-site Emergency Response Record" prepared by CFMG,

22  observed that he was in "grave condition" at the time of transport. At 2:53 P.M.—

23  less than 24 hours after he had been booked at Monterey County Jail—he was

24  pronounced dead.

25     67.     Despite Mr. Pajas's repeated requests for medical care, and the

26  obvious signs of his medical distress, Defendants ignored their legal obligations to

27  treat and monitor his drug/opiate detoxification. Defendants failed to conduct any

28  health screenings, to have him evaluated by a doctor or nurse practitioner, to take

appropriate measures to treat his detoxification, to appropriately monitor his health, to administer his medications and treatment as ordered, to immediately place him in a sobering cell, or to conduct welfare checks every fifteen minutes. Defendants also failed to summon or provide necessary medical attention in response to Mr. Pajas's condition at 1 P.M. when he reported that he could not move.  In fact, medical staff did not check on him again for another hour, when he was found unconscious in his own vomit.

68.     As a result of Defendants' actions and omissions, Mr. Pajas died a wholly preventable death, suffering, in pain and alone. His wife, children, and grandchildren lost their loved one, and continue to experience the pain and suffering of this loss.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**Excessive Force in Violation of Fourth Amendment to the U.S. Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**(Against King City Police Department, Tony Sollecito, Steve Orozco,**

**and Does 1 through 20)**

69.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 68 as though fully set forth herein.

70.     The conduct complained of herein was undertaken pursuant to the policies, practices, and customs of the King City Police Department, an agency of King City, and was sanctioned and approved by each of the individual named Defendants including the Doe Defendants.

71.     Defendants, acting under color of state law and through their policies, practices and customs, deprived Plaintiff of rights, privileges, and immunities secured by the Constitution and the laws of the United States under the Fourth Amendment by subjecting Mr. Pajas, or through their deliberate indifference allowing others to subject him, to unreasonable, unnecessary, and excessive force

1  by slamming him with a police car allegedly in order to stop him for a minor traffic

2  infraction while he was riding his bicycle.

3      72.     As a direct and proximate result of Defendants' conduct, Mr. Pajas

4  was injured as set forth above, experienced physical pain, severe emotional distress,

5  and mental anguish, as well as loss of his life and other damages alleged herein.

6      73.     Plaintiff's injuries entitle Plaintiffs to compensatory damages, and also

7  punitive damages against Defendants Sollecito and Orozco in their individual

8  capacities.

9                    **SECOND CLAIM FOR RELIEF**

10     **Deliberate Indifference to Serious Medical Needs in Violation of the**

11       **Fourteenth Amendment to the Constitution of the United States**

12                **(Survival Action – 42 U.S.C. § 1983)**

13   **(Against Defendants County of Monterey, Steve Bernal, California Forensic**

14       **Medical Group, Christina Kaupp and Does 1 through 20)**

15     74.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through

16  73 as though fully set forth herein.

17     75.     Defendants have inadequate policies, procedures, and practices for

18  identifying inmates in need of medical treatment and providing appropriate medical

19  treatment. Defendants also fail to appropriately train and supervise staff regarding

20  the provision of treatment to inmates with medical issues.

21     76.     Defendants have consistently demonstrated deliberate indifference to

22  their constitutional obligation to provide minimally adequate medical care to

23  inmates in their jails.  Defendants' failure to correct their policies, procedures, and

24  practices, despite longstanding and repeated notice of significant and dangerous

25  deficiencies, evidences deliberate indifference in the provision of medical

26  treatment.

27     77.     Defendants were specifically on notice that Mr. Pajas was in need of

28  urgent medical attention for severe heroin withdrawal symptoms and injuries

COMPLAINT FOR DAMAGES          -17-

1   sustained after being hit by a King City Police car.

2       78.     Defendants failed to provide necessary medical treatment to Mr. Pajas

3   while he was in their custody and care despite his obvious signs of medical distress.

4       79.     Defendants' acts and/or omissions as alleged herein, including but not

5   limited to their failure to provide Mr. Pajas with appropriate medical care, failure to

6   promulgate appropriate policies and procedures in order to provide treatment to

7   inmates who require detoxification, and failure to appropriately train and/or

8   supervise their staff, constituted deliberate indifference to Mr. Pajas's serious

9   medical needs, health and safety.

10      80.     As a direct and proximate result of Defendants' conduct, Mr. Pajas

11  experienced physical pain, severe emotional distress, and mental anguish, as well as

12  loss of his life and other damages alleged herein.

13      81.     The aforementioned acts and/or omissions of Defendants Bernal, in his

14  individual capacity, Kaupp, and CFMG were willful, wanton, malicious, and

15  oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive

16  damages to punish the wrongful conduct alleged herein and to deter such conduct in

17  the future.

18                        **THIRD CLAIM FOR RELIEF**

19  **Failure to Protect from Harm in Violation of the Fourteenth Amendment to**

20                **the Constitution of the United States**

21                   **(Survival Action – 42 U.S.C. § 1983)**

22  **(Against Defendants County of Monterey, Steve Bernal, King City, Tony**

23  **Sollecito, Steve Orozco, Christina Kaupp, California Forensic Medical Group,**

24                       **and Does 1 through 20)**

25      82.     Plaintiffs re-alleges and incorporate by reference paragraphs 1 through

26  81 as though fully set forth herein.

27      83.     Each Defendant could have taken action to prevent unnecessary harm

28  to Mr. Pajas but refused or failed to do so.

COMPLAINT FOR DAMAGES        -18-

84.     Defendants Monterey County, Steve Bernal, and CFMG failed to have minimally necessary policies and procedures concerning the adequate treatment of Mr. Pajas, whom they knew or should have known was in need of medical attention for his heroin addiction and being hit by a police car.

85.     Defendants Monterey County, Steve Bernal, and CFMG have consistently demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate medical care to inmates in their jails. Defendants' failure to correct their policies, procedures, and practices, despite longstanding and repeated notice of significant and dangerous deficiencies, evidences deliberate indifference in the provision of medical treatment.

86.     Defendants Monterey County, CMFG, and Kaupp were specifically on notice that Mr. Pajas was in need of urgent medical attention for severe heroin withdrawal symptoms and injuries sustained after being hit by a King City Police car.

87.     Defendants Monterey County, Steve Bernal, CFMG, and Kaupp failed to provide necessary medical treatment to Mr. Pajas while he was in their custody and care despite his obvious signs of medical distress.

88.     Defendant Monterey County deputies also failed to conduct required safety checks in fifteen minute intervals as required.

89.     The acts and/or omissions of Defendants Monterey County, Steven Bernal, CFMG, and Kaupp as alleged herein, including but not limited to their failure to provide Mr. Pajas with appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to inmates who require detoxification, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Mr. Pajas's serious medical needs, health and safety.

90.     Defendants King City and Steve Orozco also used excessive force in apprehending Mr. Pajas, and then failed to provide Mr. Pajas with medical attention

notwithstanding King City's knowledge that Mr. Pajas had been hit by a police car.

91.     Defendants King City and Steve Orozco were specifically on notice that Mr. Pajas was in need of urgent medical attention for severe heroin withdrawal symptoms and injuries sustained after being hit by a King City Police car.

92.     Defendants King City and Steve Orozco failed to immediately provide necessary medical treatment to Mr. Pajas while he was in their custody and care despite his obvious signs of medical distress. Instead, waiting nearly four hours before taking him for treatment at Natividad Medical Center.

93.     The acts and/or omissions of Defendants King City, Tony Sollecito, and Steve Orozco as alleged herein, including but not limited to their failure to provide Mr. Pajas with immediate and appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to persons injured during arrests and who require detoxification, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Mr. Pajas's serious medical needs, health and safety.

94.     Mr. Pajas also placed all Defendants on notice that he used heroin earlier that day, was a regular heroin user, and would be suffering withdrawal symptoms. Mr. Pajas notified custodial and medical staff that he needed medication. Monterey County and CFMG have failed to promulgate appropriate policies and procedures in order to provide treatment to inmates who require detoxification. Defendants also failed to create minimally necessary policies and procedures for ensuring that medical staff provided known substance users with adequate and necessary medical treatment. Lastly, Defendants failed to train and supervise medical staff to treat inmates who are detoxing or suffering withdrawal.

95.     Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to follow a mandated and lifesaving treatment plan, their failure to create minimally necessary policies and procedures for ensuring that medical staff provided inmates who are detoxing with adequate and necessary

medical treatment, and their failure to train and supervise medical staff to treat inmates with serious and life threatening illnesses, constituted deliberate indifference to Mr. Pajas's serious medical needs and safety.

96.      As a direct and proximate result of Defendants' conduct, Mr. Pajas experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

97.      The aforementioned acts and/or omissions of Defendants Bernal, in his individual capacity, Sollecito, in his individual capacity, Orozco, in his individual capacity, Kaupp, and CFMG were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## FOURTH CLAIM FOR RELIEF

**Deprivation of Substantive Due Process Rights in Violation of First and Fourteenth Amendments to the Constitution of the United States – Loss of Parent/Child Relationship (42 U.S.C. § 1983)**

**(Against all Defendants)**

98.      Plaintiffs re-allege and incorporate by reference paragraphs 1 through 97 as though fully set forth herein.

99.      The aforementioned acts and/or omissions of Defendants in being deliberatively indifferent to Mr. Pajas's serious medical needs, health and safety, violating Mr. Pajas's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Mr. Pajas deprived Plaintiffs of their liberty interest in a husband-wife and parent-child relationship in violation of their substantive due process rights as defined by the First and Fourteenth Amendments to the United States Constitution.

100.      As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein.

101.    The aforementioned acts and/or omissions of Defendants Bernal, in his individual capacity, Sollecito, in his individual capacity, Orozco, in his individual capacity, Kaupp, and CFMG were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

### FIFTH CLAIM FOR RELIEF

**Medical Malpractice (Survival Actions – California State Law)**

**(Against Defendants County of Monterey, Christina Kaupp, California Forensic Medical Group, and Does 1 through 20)**

102.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 101 as though fully set forth herein.

103.    Defendants failed to comply with professional standards in the treatment of Mr. Pajas's serious medical illness by failing to evaluate, diagnose and treat injuries related to being hit by a police car, ignoring repeated requests for medical care, failing to address obvious signs of medical distress, and ignoring the duties of medical staff to treat and monitor his drug/opiate detoxification. Furthermore, Defendants failed to conduct any health screenings, to take appropriate measures to treat his detoxification, to appropriately monitor his health and to administer his medications and treatment as ordered.

104.    Defendants also failed to appropriately supervise, review, and ensure the competence of medical staff's provision of treatment to Mr. Pajas, and failed to enact appropriate standards and procedures that would have prevented such harm to him.

105.    As a direct and proximate cause of this negligence and failure to meet their professional standards of care of Mr. Pajas, Plaintiffs suffered injuries and damages as alleged herein.

106.    The negligent conduct of these Defendants was committed within the course and scope of their employment.

107.     The aforementioned acts and/or omissions of Defendants Kaupp, and CFMG were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## SIXTH CLAIM FOR RELIEF

### Failure to Furnish / Summon Medical Care

### (Survival Action – California State Law)

### (Against Defendants County of Monterey, Steve Bernal, King City, Steve Orozco, California Forensic Medical Group, Christina Kaupp and Does 1 through 20)

108.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 107 as though fully set forth herein.

109.     Defendants owed Mr. Pajas a duty of care to provide him immediate medical care.

110.     The conduct of Defendants alleged herein, including but not limited to the facts that Defendants knew or had reason to know that Mr. Pajas was in need of immediate medical care and that Defendants failed to take reasonable action to summon or provide that care, resulting in Mr. Pajas's death as alleged herein, violated California state law, including Cal.Govt. Code §§ 844.6 and 845.6.

111.     Defendants failed to evaluate, diagnose and treat Mr. Pajas's injuries related to being hit by a police car, and also failed to timely and appropriately respond to Mr. Pajas's obvious signs of medical distress on numerous occasions by waiting four hours before he was hit by a car to furnish medical care, ignoring his repeated requests for medical care, failing to address obvious signs of medical distress, and ignoring the duties of medical staff to treat and monitor his drug/opiate detoxification. Furthermore, Defendants failed to conduct any health screenings, to take appropriate measures to treat his detoxification, to appropriately monitor his health and to administer his medications and treatment as ordered.

112.     The alleged conduct of Defendants was committed within the course and scope of their employment.

113.     As a direct and proximate result of Defendants' breach, Mr. Pajas and Plaintiffs suffered injuries and damages causing great pain and leading to his death, as alleged herein.

114.     The aforementioned acts and/or omissions of Defendants Bernal, in his individual capacity, Orozco, CFMG and Kaupp, were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## SEVENTH CLAIM FOR RELIEF

### Negligent Supervision, Training, Hiring, and Retention

### (Survival Action – California State Law)

### (Against Defendants County of Monterey, Steve Bernal, King City, Tony Sollecito, California Forensic Medical Group, and Does 1 through 20)

115.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 114 as though fully set forth herein.

116.     Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or omissions alleged herein.

117.     Defendants breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

118.     As a direct and proximate result of Defendants' failure, Mr. Pajas and Plaintiffs suffered injuries and damages as alleged herein.

/ / /

/ / /

/ / /

## EIGHTH CLAIM FOR RELIEF

### Cal. Civil Code § 52.1

### (Survival Action –California State Law)

### (Against Defendants King City, Tony Sollecito, and Steve Orozco, and Does 11-15)

119.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 118 as though fully set forth herein.

120.    The California Constitution Art. I § 13 and the United States Constitution Amendment IV, guarantee the right of persons to be free from arrests without probable cause, unreasonable searches and seizures and use of unnecessary and excessive force on the part of law enforcement officers. Defendants King City, Tony Sollecito and Steve Orozco, by engaging in the wrongful conduct alleged herein, including but not limited to the use of unnecessary and excessive force, denied the rights to Plaintiff either directly or through their deliberate indifference, thus giving Plaintiff a claim for damages pursuant to Cal Civ. Code § 52.1.

121.    As a direct and proximate result of  Defendants' conduct, Mr. Pajas and Plaintiffs suffered injuries and damages as alleged herein and are entitled to statutory damages under Cal. Civ. Code § 52, as well as compensatory damages.

122.    The aforementioned acts and/or omissions of Sollecito and Orozco were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## NINTH CLAIM FOR RELIEF

### Battery

### (Survival Action – California State Law)

### (Against Defendants King City, Tony Sollecito, Steve Orozco, and Does 11-15)

123.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 122 as though fully set forth herein.

1    124.    Defendants engaged in a battery of Mr. Pajas by hitting him with a

2  police car, thereby touching him against his consent with intent to harm, where Mr.

3  Pajas was in fact harmed by Defendants' conduct and a reasonable person in Mr.

4  Pajas's situation would have been offended.

5    125.    As a direct and proximate cause of the aforementioned acts of

6  Defendants, Mr. Pajas was injured as set forth above.

7    126.    As a direct and proximate result of Defendants' conduct Mr. Pajas and

8  Plaintiffs suffered injuries and damages as alleged herein.

9    127.    Plaintiffs' injuries entitle them to compensatory and punitive damages

10  according to proof as to the individual Defendants and compensatory damages

11  alone as to the County Defendants.

12  **TENTH CLAIM FOR RELIEF**

13  **Wrongful Death – California Code Civ. Proc. § 377.60**

14  **(Against Defendants County of Monterey, Steve Bernal, California Forensic**

15  **Medical Group, and Does 1 through 20)**

16    128.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through

17  127 as though fully set forth herein.

18    129.    Mr. Pajas's death was a direct and proximate result of the

19  aforementioned wrongful and/or negligent acts and/or omissions of Defendants.

20  Defendants' acts and/or omissions thus were also a direct and proximate cause of

21  Plaintiffs' injuries and damages, as alleged herein.

22    130.    As a direct and proximate result of Defendants' wrongful and/or

23  negligent acts and/or omissions, Plaintiff incurred expenses for funeral and burial

24  expenses in an amount to be proved.

25    131.    As a direct and proximate result of Defendants' wrongful and/or

26  negligent acts and/or omissions, Plaintiffs suffered the loss of the services, society,

27  care, and protection of the decedent, as well as the loss of the present value of his

28  future services to his wife and children. Plaintiffs are further entitled to recover

prejudgment interest.

132.     Plaintiff Estate of Mark Vasquez Pajas Sr. is entitled to recover punitive damages against individual Defendants who, with conscious disregard of Mr. Pajas's rights, failed to summon and provide Mr. Pajas with medical treatment meeting the professional standard of practice and failed to adhere to the legal mandates of prisoner supervision.

133.     The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiff of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## ELEVENTH CLAIM FOR RELIEF

### Negligence

### (Survival Actions – California State Law)

### (Against Defendants County of Monterey, Steve Bernal, King City, Tony Sollecito, Steve Orozco, California Forensic Medical Group, Christina Kaupp, and Does 1 through 20)

134.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 133 as though fully set forth herein.

135.     Defendants failed to comply with professional standards in the treatment of Mr. Pajas's serious medical illness by failing to provide him evaluation or treatment for being hit by a police car, failing to appropriately assess and evaluate his medical needs, ignoring repeated requests for medical care, failing to address obvious signs of medical distress, failing to provide appropriate medical treatment, failing to adopt the minimum policies, procedures, and training necessary to ensure identification or and response to medical emergencies, and ignoring the duties of medical staff to treat and monitor his drug/opiate detoxification. Furthermore, Defendants failed to conduct any health screenings, to take appropriate measures to treat his detoxification, to appropriately monitor his health

COMPLAINT FOR DAMAGES                    -27-

1    and to administer his medications and treatment as ordered.

2         136.    Defendants also failed to appropriately supervise, review, and ensure

3    the competence of officers, jail staff, and medical staffs' provision of treatment to

4    Mr. Pajas, and failed to enact appropriate standards and procedures that would have

5    prevented such harm to him.

6         137.    Together, these Defendants acted negligently and improperly,

7    breached their respective duties, and as a direct and proximate result, Mr. Pajas and

8    Plaintiffs suffered injuries and damages as alleged herein.

9         138.    The negligent conduct of Defendants was committed within the course

10   and scope of their employment.

11        139.    The aforementioned acts and/or omissions of Defendants Bernal, in his

12   individual capacity, Sollecito, in his individual capacity, Orozco, CFMG, and

13   Kaupp, were willful, wanton, malicious, and oppressive, thereby justifying an

14   award to Plaintiffs of exemplary and punitive damages to punish the wrongful

15   conduct alleged herein and to deter such conduct in the future.

16                          **PRAYER FOR RELIEF**

17        WHEREFORE, Plaintiffs pray for the following relief:

18        1.    For compensatory, general and special damages against each

19   Defendant, jointly and severally, in an amount to be proven at trial;

20        2.    For damages related to loss of familial relations as to Plaintiffs

21   Rosemary Lopez, Yvette Pajas, Mark Pajas Jr., Janel Pajas, and Xavier Pajas;

22        3.    Funeral and burial expenses, and incidental expenses not yet fully

23   ascertained;

24        4.    General damages, including damages for physical and emotional pain,

25   emotional distress, hardship, suffering, shock, worry, anxiety, sleeplessness, illness

26   and trauma and suffering, the loss of the services, society, care and protection of the

27   decedent, as well as the loss of financial support and contributions, loss of the

28   present value of future services and contributions, and loss of economic security;

1
     5.       Prejudgment interest;

2
     6.       For punitive and exemplary damages against each individually named

3
Defendant and all Defendants for which punitive damages are available under the

4
law, in an amount appropriate to punish Defendant(s) and deter others from

5
engaging in similar misconduct;

6
     7.       For costs of suit and reasonable attorneys' fees and costs pursuant to

7
42 U.S.C. § 1988, and as otherwise authorized by statute or law;

8
     8.       For restitution as the court deems just and proper;

9
     9.       For such other relief, including injunctive and/or declaratory relief, as

10
the Court may deem proper.

11
**DEMAND FOR JURY TRIAL**

12
      Plaintiffs hereby demand trial by jury in this action.

13

14
Dated: February 25, 2016         Respectfully Submitted,

15
                                      RIFKIN LAW OFFICE

16
                                      HADSELL STORMER & RENICK LLP

17

18
                                      By:  /s/ - Dan Stormer

19
                                            Dan Stormer
                                            Lori Rifkin

20
                                            Joshua Piovia-Scott
                                          Cindy Pánuco

21
                                      Attorneys for Plaintiffs

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES       -29-