1

2

3

4

5

6

7

8                             UNITED STATES DISTRICT COURT

9                            NORTHERN DISTRICT OF CALIFORNIA

10                                      SAN JOSE DIVISION

11

12    MARK VASQUEZ PAJAS, et al.,              Case No. 16-CV-00945-LHK

13                   Plaintiffs,               **ORDER GRANTING IN PART AND
                                               DENYING IN PART MOTIONS TO**
14          v.                                 **DISMISS**

15    COUNTY OF MONTEREY, et al.,              Re: Dkt. Nos. 23, 28, 32

16                   Defendants.

17

18          Plaintiffs Rosemary Lopez, individually and as Administrator of the Estate of Mark

19    Vasquez Pajas, Sr.; Yvette Pajas; Mark Pajas, Jr.; Janel Pajas; and Xavier Pajas (collectively,

20    "Plaintiffs"), successors in interest to Mark Vasquez Pajas, Sr. ("Decedent"), allege that

21    Defendants County of Monterey, Steve Bernal, King City, King City Police Department, Tony

22    Sollecito, Steve Orozco, California Forensic Medical Group, and Christina Kaupp are liable under

23    federal and state law for the death of Decedent.  Before the Court are: (1) the motion to dismiss

24    filed by Defendants County of Monterey ("County") and Monterey County Sheriff Steve Bernal

25    ("Bernal") (collectively, the "County Defendants"), ECF No. 23; (2) the motion to dismiss filed by

26    Defendants California Forensic Medical Group ("CFMG") and CFMG Nurse Christina Kaupp

27    ("Kaupp") (collectively, the "CFMG Defendants"), ECF No. 28; and (3) the motion to dismiss

28

1

United States District Court
Northern District of California

1   filed by Defendants King City, King City Police Department, King City Police Chief Tony

2   Sollecito ("Sollecito"), and King City Police Officer Steve Orozco ("Orozco") (collectively, the

3   "King City Defendants"), ECF No. 32.  Having considered the parties' submissions, the relevant

4   law, and the record in this case, the Court hereby GRANTS IN PART and DENIES IN PART the

5   County Defendants' motion to dismiss, GRANTS IN PART and DENIES IN PART the CFMG

6   Defendants' motion to dismiss, and GRANTS IN PART and DENIES IN PART the King City

7   Defendants' motion to dismiss.

8   I.      BACKGROUND

9          A.  Factual Background

10             1.  The Parties

11         Plaintiffs bring this action as successors in interest to Decedent Mark Vasquez Pajas, Sr.

12   Compl., ECF No. 1, ¶¶ 9-14.  Plaintiff Rosemary Lopez is Decedent's wife and the Administrator

13   of Decedent's Estate.  *Id.* ¶¶ 9-10.  Plaintiffs Yvette Pajas and Janel Pajas are Decedent's

14   daughters.  *Id.* ¶¶ 11, 13.  Plaintiffs Mark Pajas, Jr. and Xavier Pajas are Decedent's sons.  *Id.*

15   ¶¶ 12, 14.

16         Defendant County of Monterey is a public entity organized and existing under the laws of

17   the State of California.  *Id.* ¶ 15.  According to Plaintiffs, the County operates and manages

18   Monterey County Jail.  *Id.*  Defendant Steve Bernal was the Sheriff of the County of Monterey at

19   the time of Decedent's death.  *Id.* ¶ 16.  As sheriff, Bernal "was charged by law with the

20   administration of the Monterey County Jail" and "was responsible for promulgation of the policies

21   and procedures and allowance of the practices/customs" alleged in the Complaint.  *Id.*

22         The County contracts with Defendant CFMG to provide medical, mental health, and dental

23   services for the Monterey County Jail.  *Id.* ¶ 20.  Defendant CFMG is a California corporation

24   headquartered in Monterey, California.  *Id.*  Defendant Christina Kaupp, RN, is a nurse employed

25   by CFMG at the Monterey County Jail.  *Id.* ¶ 21.

26         Defendant King City is a municipality organized under the laws of the State of California.

27   *Id.* ¶ 17.  Defendant King City Police Department is an agency of King City.  *Id.*  Plaintiffs allege

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

that the King City Police Department was "responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the King City Police Department and its respective employees and/or agents." *Id.* Defendant Steve Orozco is a King City police officer. *Id.* Plaintiffs allege in their complaint that Defendant Tony Sollecito was the Chief of the King City Police Department at all relevant times and "was responsible for the promulgation of the policies and procedures and allowance of the practices/customs" alleged in the Complaint. *Id.* ¶ 18. On June 24, 2016, the King City Defendants filed an affidavit of King City Police Commander Alejandrina Tirado in which Tirado states that Tirado, not Sollecito, had "the responsibilities and duties normally assigned to the Chief of Police" at the time of the incident alleged in the complaint. ECF No. 56.

**2. The Events of January 19 and 20, 2015**

On January 19, 2015,Defendant Orozco allegedly observed Decedent riding a bicycle in the opposite direction of traffic in Salinas, California. *Id.* ¶ 45. When Decedent refused to stop in response to a verbal command from Orozco, Orozco activated his overhead emergency lights and pursued Decedent. *Id.* Decedent rode his bicycle onto the sidewalk. *Id.* ¶ 46. Plaintiffs allege that Orozco then drove onto the sidewalk and slammed Decedent and Decedent's bicycle into a chain link fence. *Id.* Orozco's arrest report states that "Pajas was not hurt but he did have a medical problem which had caused his legs to swell up." *Id.* ¶ 49. Orozco arrested Decedent at 12:12 p.m. and transported Decedent to the King City Police Department for booking. *Id.* ¶ 50.

Decedent was initially placed in a holding cell at the King City Police Department. *Id.* ¶ 51. Approximately four hours after Decedent's arrest, Orozco took Decedent to the Natividad Medical Center ("Natividad"). *Id.* ¶ 52. At Natividad, Decedent was evaluated by Dr. Daniel Wasserman. *Id.* Decedent informed Dr. Wasserman and a triage nurse that Decedent was addicted to heroin and that Decedent "would need help for the withdrawal symptoms he expected during his incarceration." *Id.* Dr. Wasserman diagnosed Decedent with cellulitis, leg swelling, and shortness of breath, and noted that Decedent suffered "Congestive heart failure with not elevated BNP." *Id.* Dr. Wasserman medically cleared Decedent for jail at 6:30 p.m. with the

United States District Court
Northern District of California

1  instruction that if Decedent "develop[s] chest pain or shortness of breath return to the ER

2  immediately." *Id.*

3          Orozco then took Decedent to the Monterey County Jail. *Id.* ¶ 53. During the "Intake

4  Health Screening" performed by the Monterey County Sheriff's Office at 6:55 p.m., Decedent

5  reported that he had used heroin earlier that day. *Id.* ¶ 54. During the "Intake Triage Assessment"

6  performed by Defendant CFMG at 7 p.m., Decedent again reported that Decedent had used "'a lot'

7  of heroin 'earlier today' and stated, 'he is coming down and needs meds to help him.'" *Id.* ¶ 55.

8  CFMG staff noted that Decedent should be placed on "opiate detox," with a specified series of

9  medications to be taken throughout the following days and with instructions to check Decedent's

10 vital signs throughout the day. *Id.* Notwithstanding the note that Decedent was to be placed on

11 "opiate detox," Plaintiffs allege that CFMG does not have a separate treatment protocol for opiate

12 withdrawal but instead uses a protocol for alcohol detoxification. *Id.* ¶ 56. Plaintiffs allege that,

13 pursuant to CFMG's alcohol detoxification protocol, Decedent was not seen by a doctor at the jail

14 but was instead to have a "Sick Call in 72 hours for re-evaluation." *Id.* ¶ 57.

15         CFMG placed Decedent in a sobering cell at 4:17 a.m. on January 20, 2016. *Id.* ¶ 58. At

16 4:45 a.m., CFMG nursing staff assessed Decedent and reported that Decedent had vomited in his

17 cell but did not take Decedent's vitals. *Id.* ¶ 59. CFMG nursing staff next checked on Decedent at

18 8:30 a.m. and found that Decedent was "laying on the cell floor" and "wants Gatorade." *Id.*

19 CFMG nursing staff did not take Decedent's vitals in the 8:30 a.m. check. *Id.* The next check-in

20 by CFMG nursing staff was at 1 p.m. when Defendant Kaupp checked on Decedent. *Id.* ¶ 60.

21 Kaupp noted that Decedent was still lying on the floor and "stated he can't move," but Kaupp did

22 not believe Decedent because several unidentified deputies had "witnessed [Decedent] walking

23 around cell moments prior." *Id.* Kaupp did not take Decedent's vitals. *Id.*

24         A little over an hour later, at 2:12 p.m., two Monterey County Sheriff's Office deputies

25 went to place a second inmate in Decedent's sobering cell and found Decedent "face down and

26 unconscious in a pool of his own vomit." *Id.* ¶ 62. The deputies first escorted the second inmate

27 to a separate sobering cell while calling out to Decedent to solicit a response. *Id.* ¶¶ 63-64. At

28

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1   2:16 p.m., another deputy arrived at Decedent's cell and attempted to provide emergency aid to

2   Decedent. *Id.* ¶ 65. Emergency medical personnel arrived at 2:21 p.m. *Id.*

3       At 2:37 p.m., Decedent was transported in "grave condition" to Natividad. *Id.* ¶ 66. At

4   2:53 p.m., Decedent was pronounced dead. *Id.* Plaintiffs allege that "[a]s a result of Defendants'

5   actions and omissions, [Decedent] died a wholly preventable death." *Id.* ¶ 68.

6       **3.  Allegations against the County and CFMG**

7       Plaintiffs further allege that the County and CFMG "have a policy and practice of failing to

8   provide adequate medical care to inmates at Monterey County Jail, and are deliberately indifferent

9   to the fact that their failure to do so subjects inmates to substantial risk of unnecessary suffering,

10  serious injury and death." *Id.* ¶ 32. Plaintiffs allege that the County and CFMG "have been on

11  notice that their provision of medical care to inmates is inadequate and results in needless harm

12  since at least 2007, when the Monterey County Sheriff's Office and the Monterey County Board

13  of Supervisors hired an outside consulting firm to perform a needs assessment" for the Monterey

14  County Jail. *Id.* ¶ 33. Plaintiffs allege that the needs assessment was updated in December 2011.

15  *Id.* ¶ 34 & Ex. 1. The needs assessment found that the Monterey County Jail was chronically

16  understaffed, and that chronic understaffing hinders the ability to provide adequate medical care.

17  *Id.* ¶ 35. Specifically, Plaintiffs allege that the "available health care staff [at the Monterey

18  County Jail] is insufficient to provide medical evaluations, monitoring, and follow-up care to

19  inmates who are suffering from serious and chronic illnesses, or to treat inmates on an emergency

20  basis." *Id.* ¶ 36.

21      In addition to the needs assessment, Plaintiffs allege that "the County of Monterey was

22  again specifically put on notice of serious problems with detoxification and sobering treatment in

23  the jail" via a class action lawsuit, *Hernandez v. Cnty. of Monterey*, No. 5:13-cv-2354-BLF (N.D.

24  Cal.), filed against the County of Monterey in 2013. *Id.* ¶ 37. Plaintiffs allege that class counsel

25  in *Hernandez* "specifically objected to the fact that defendants' agents and staff were employing a

26  dangerous and punitive 'detox protocol,' refusing medications to inmates who then suffered from

27  intense, untreated pain as well as powerful, dangerous and unnecessary withdrawal symptoms."

28

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

*Id.* ¶ 37.  Then, in 2014 and 2015, the Monterey County Civil Grand Jury undertook an audit of the Monterey County Jail.  *Id.* ¶ 38.  In January 2015—the same month in which Decedent died—the Monterey County Civil Grand Jury's audit found that "inmate health and welfare (safety checks) are frequently missed or skipped or not adequately documented."  *Id.* ¶ 38.

**B. Procedural History**

Plaintiffs filed their complaint on February 25, 2016.  ECF No. 1.  The complaint alleges eleven causes of action against the Defendants as follows:

| | County of Monterey | Steve Bernal | King City | King City Police Department | Tony Sollecito | Steve Orozco | California Forensic Medical Group | Christina Kaupp |
|---|---|---|---|---|---|---|---|---|
| **Claim 1: 42 U.S.C. § 1983—excessive force in violation of the Fourth Amendment** | | | | X | X | X | | |
| **Claim 2: 42 U.S.C. § 1983—deliberate indifference to serious medical needs in violation of the Fourteenth Amendment** | X | X | | | | | X | X |
| **Claim 3: 42 U.S.C. § 1983—failure to protect in violation of the Fourteenth Amendment** | X | X | X | | X | X | X | X |
| **Claim 4: 42 U.S.C. § 1983—deprivation of substantive due process rights in violation of the First and Fourteenth Amendments** | X | X | X | X | X | X | X | X |
| **Claim 5: Medical Malpractice** | X | | | | | | X | X |
| **Claim 6: Failure to Summon Medical Care in violation of Cal. Gov't Code § 845.6** | X | X | X | | | X | X | X |
| **Claim 7: Negligent Supervision, Training, Hiring, and Retention** | X | X | X | | X | | X | |
| **Claim 8: Violation of Cal.** | | | X | | X | X | | |

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Civil Code § 52.1** | | | | | | | | |
| **Claim 9: Battery** | | | X | | X | X | | |
| **Claim 10: Wrongful Death** | X | X | | | | | X | |
| **Claim 11: Negligence** | X | X | X | | X | X | X | X |

The County Defendants filed a motion to dismiss on April 5, 2016.  ECF No. 23 ("County Mot.").  Plaintiffs filed an opposition on April 19, 2016.  ECF No. 30 ("County Opp.").  The County Defendants filed a reply on April 26, 2016.  ECF No. 33 ("County Reply").

The CFMG Defendants filed a motion to dismiss on April 13, 2016.  ECF No. 28 ("CFMG Mot.").  Plaintiffs filed an opposition on April 27, 2016.  ECF No. 34.  The CFMG Defendants filed a reply on May 4, 2016.  ECF No. 35.

The King City Defendants filed a motion to dismiss on April 21, 2016.  ECF No. 32 ("King City Mot.").  Plaintiffs filed an opposition on May 5, 2016.  ECF No. 36 ("King City Opp.").  The King City Defendants filed a reply on May 12, 2016.  ECF No. 46 ("King City Reply").

## II.      LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1  in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

2  519 F.3d 1025, 1031 (9th Cir. 2008).

3       However, a court need not accept as true allegations contradicted by judicially noticeable

4  facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look

5  beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

6  motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

7  Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in

8  the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

9  curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

10 "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

11 dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

12 Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

13 [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th

14 Cir. 1997).

15      **B.  Leave to Amend**

16      If the Court determines that the complaint should be dismissed, it must then decide

17 whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

18 to amend "should be freely granted when justice so requires," bearing in mind that "the underlying

19 purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

20 technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  When dismissing

21 a complaint for failure to state a claim, "a district court should grant leave to amend even if no

22 request to amend the pleading was made, unless it determines that the pleading could not possibly

23 be cured by the allegation of other facts."  *Id*. at 1130 (quoting *Doe v. United States*, 58 F.3d 494,

24 497 (9th Cir. 1995)).  Nonetheless, a court "may exercise its discretion to deny leave to amend due

25 to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

26 deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and]

27 futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir.

28

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

2    **III.    DISCUSSION**

3            The County Defendants move to dismiss Claims 2, 3, and 4 (42 U.S.C. § 1983 causes of

4    action against the County Defendants) as to Steve Bernal; Claim 6 (failure to summon medical

5    care) as to both County Defendants; Claim 7 (negligent supervision, training, hiring, and

6    retention) as to both County Defendants; Claim 10 (wrongful death) as to both County

7    Defendants; and Claim 11 (negligence) as to both County Defendants.  *See* County Mot.

8            The CFMG Defendants move to dismiss all claims brought against the CFMG Defendants

9    (Claims 2, 3, and 4 brought under 42 U.S.C. § 1983; Claim 5 for medical malpractice; Claim 6 for

10   failure to summon medical care; Claim 7 for negligent supervision, training, hiring, and retention;

11   Claim 10 for wrongful death; and Claim 11 for negligence).  *See* CFMG Mot.

12           The King City Defendants move to dismiss all claims brought against the King City Police

13   Department (Claims 1 and 4 brought under 42 U.S.C. § 1983) and Tony Sollecito (Claims 1, 3,

14   and 4 brought under 42 U.S.C. § 1983; Claim 7 for negligent supervision, training, hiring, and

15   retention; Claim 8 for violation of Cal. Civil Code § 52.1; Claim 9 for battery; and Claim 11 for

16   negligence).  *See* King City Mot.  The King City Defendants additionally move to dismiss Claim 6

17   (failure to summon medical care) as to Steve Orozco.  *Id.*

18           On June 30, 2016, the Court granted the parties' stipulation to dismiss Tony Sollecito with

19   prejudice.  ECF No. 59.  Accordingly, the Court DENIES AS MOOT the King City Defendants'

20   motion to dismiss Tony Sollecito.

21           As to the remaining Defendants, because of the overlap in relevant substantive law, the

22   Court addresses the three motions to dismiss together.  The Court begins by analyzing the merits

23   of the motions to dismiss Plaintiffs' Claims 1-4, brought under 42 U.S.C. § 1983.  The Court then

24   addresses the motions to dismiss Plaintiffs' state law causes of action.

25           **A. Section 1983 Claims**

26           Plaintiffs bring three survival claims under 42 U.S.C. § 1983: Claim 1 for excessive force

27   in violation of the Fourth Amendment against Defendants King City Police Department, Tony

28   
Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

Sollecito, and Steve Orozco; Claim 2 for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment against the County of Monterey, Steve Bernal, CFMG, and Christina Kaupp; and Claim 3 for failure to protect in violation of the Fourteenth Amendment against the County of Monterey, Steve Bernal, King City, Tony Sollecito, Steve Orozco, CFMG, and Christina Kaupp.  Plaintiffs additionally bring a claim, Claim 4, under 42 U.S.C. § 1983 for deprivation of the parent-child relationship in violation of the First and Fourteenth Amendments. Pursuant to the parties' stipulation, the Court has already dismissed with prejudice all claims against Tony Sollecito.  *See* ECF No. 59.

### 1. Governing Law for 42 U.S.C. § 1983 Claims

Claims for excessive force are analyzed under the Fourth Amendment's prohibition against unreasonable seizures.  *Graham v. Connor*, 490 U.S. 386, 394 (1989); *accord Young v. Cty. of L.A.*, 655 F.3d 1156, 1161 (9th Cir. 2011).  To state an excessive force claim, a plaintiff must allege facts showing that the officer's conduct was "objectively unreasonable in light of the facts and circumstances confronting them."  *Graham*, 490 U.S. at 397 (internal quotation marks omitted).  In determining whether an officer's conduct is objectively unreasonable, the Court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion to determine whether it was constitutionally reasonable."  *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003).

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment.  *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).[1]  Likewise, prison officials have an affirmative duty to "ensure that inmates receive adequate food, clothing,

---

[1] Claims alleging Fourteenth Amendment violations for deliberate indifference to the medical needs of pretrial detainees are analyzed under the same framework as Eighth Amendment violations.  *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010) (applying Eighth Amendment framework to claim for deliberate indifference to serious medical needs of a pretrial detainee brought under the Fourteenth Amendment).

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1   shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Prison officials violate

2   their affirmative duty by "acting or failing to act with deliberate indifference to a substantial risk

3   of serious harm to a prisoner."  *Id.* at 836.

4         A determination of "deliberate indifference" involves an examination of two elements: the

5   seriousness of the prisoner's medical need and the nature of the defendant's response to that need.

6   *See McGuckin*, 974 F.2d at 1059.  A prison official is deliberately indifferent if she or he knows

7   that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take

8   reasonable steps to abate it.  *Farmer v. Brennan*, 511 U.S. at 837.  The prison official must not

9   only "be aware of facts from which the inference could be drawn that a substantial risk of serious

10   harm exists," but he or she "must also draw the inference."  *Id.*  "Prison officials are deliberately

11   indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere

12   with medical treatment. . . . Mere negligence in diagnosing or treating a medical condition,

13   without more, does not violate a prisoner's Eighth Amendment rights." *Lopez v. Smith*, 203 F.3d

14   1122, 1131 (9th Cir.2000) (citation omitted); *see Farmer,* 511 U.S. at 835–36 & n.4, 114 S.Ct.

15   1970 (recognizing that neither negligence nor gross negligence will constitute deliberate

16   indifference).

17         A plaintiff may state a claim under § 1983 against a supervisor for deliberate indifference.

18   *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011).  "A defendant may be held liable as a

19   supervisor under § 1983 if there exists either (1) his or her personal involvement in the

20   constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful

21   conduct and the constitutional violation."  *Id*. at 1207 (citation omitted).  "A supervisor can be

22   liable in his individual capacity for his own culpable action or inaction in the training, supervision,

23   or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct

24   that showed a reckless or callous indifference to the rights of others."  *Id*. at 1208 (quoting

25   *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).  Additionally, "[s]upervisory

26   liability exists even without overt personal participation in the offensive act if supervisory officials

27   implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is

28

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1   the moving force of the constitutional violation." *Redman v. Cnty. San Diego*, 942 F.2d 1435,

2   1446 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

3          When, as here, a plaintiff seeks damages against a defendant, the "inquiry into causation

4   must be individualized and focus on the duties and responsibilities of each individual defendant

5   whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*,

6   844 F.2d 628, 633 (9th Cir. 1988). A defendant thus would not have exposure for every

7   shortcoming in the medical department at the prison, but only if she personally was deliberately

8   indifferent. *Id.* at 633–34.

9          Moreover, a defendant's action or inaction "is the actual cause of [the] injury only if the

10   injury would not have occurred 'but for' that conduct." *White v. Roper*, 901 F.2d 1501, 1505 (9th

11   Cir. 1990).  "The requisite causal connection can be established not only by some kind of direct

12   personal participation in the deprivation, but also by setting in motion a series of acts by others

13   which the actor knows or reasonably should know would cause others to inflict the constitutional

14   injury." *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978).  Thus, "[t]he critical question is

15   whether it was reasonably foreseeable that the actions of the particular . . . officials who are named

16   as defendants would lead to the rights violations alleged to have occurred." *Wong v. United*

17   *States*, 373 F.3d 952, 966 (9th Cir. 2004).

18          "Substantive due process protects individuals from arbitrary deprivation of their liberty by

19   government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006).  "Parents and children may

20   assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty

21   interest in the companionship and society of their child or parent through official conduct."

22   *Lemire v. Cal. Dept. Corrections & Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013).  The

23   Ninth Circuit has stated that "to establish a constitutional violation based on substantive due

24   process, [a plaintiff] must show both a deprivation of her liberty and conscience-shocking

25   behavior by the government." *Id.*  "Just as the deliberate indifference of prison officials to the

26   medical needs of prisoners may support Eighth Amendment liability, such indifference may also

27   rise to the conscience-shocking level required for a substantive due process violation." *Lemire*,

28

12

United States District Court
Northern District of California

1    726 F.3d at 1075.

2         **2.  Defendant King City Police Department**

3         The King City Defendants move to dismiss both claims brought against the King City

4    Police Department—Claims 1 and 4—on the grounds that police departments may not be subject

5    to suit under 42 U.S.C. § 1983.  King City Mot. at 5 (citing *Vance v. Cty. of Santa Clara*, 928 F.

6    Supp. 993, 995-96 (N.D. Cal. 1996) (holding that municipal departments are not "persons" subject

7    to suit under 42 U.S.C. § 1983); *Garcia v. City of Merced*, 637 F. Supp. 2d 731, 760 (E.D. Cal.

8    2008) (holding that, as a municipal department, a police department may not be sued under 42

9    U.S.C. § 1983)).  Plaintiffs concede that dismissal of the King City Police Department with

10   prejudice is appropriate.  King City Opp. at 4-5.  Accordingly, the Court GRANTS the King City

11   Defendants' motion to dismiss the King City Police Department with prejudice.

12        Plaintiffs request that the Court either construe the allegations directed towards the King

13   City Police Department in Claims 1 and 4 as allegations against King City or grant Plaintiffs leave

14   to amend Claims 1 and 4 to name King City as a Defendant.  King City Opp. at 4-5.  In reply, the

15   King City Defendants do not respond to Plaintiffs' request to amend the complaint to add King

16   City as a Defendant to Claims 1 and 4.  King City Reply at 7.  Because the Court concludes that

17   amending Claims 1 and 4 would not necessarily be futile, the Court GRANTS Plaintiffs leave to

18   amend the complaint to substitute King City for the King City Police Department in Claims 1 and

19   4.  *See Lopez*, 203 F.3d at 1130 (when dismissing a complaint for failure to state a claim, "a

20   district court should grant leave to amend even if no request to amend the pleading was made,

21   unless it determines that the pleading could not possibly be cured by the allegation of other facts").

22        **3.  Steve Bernal**

23        The County Defendants move to dismiss Claims 2, 3, and 4 against Sheriff Steve Bernal on

24   the grounds that the complaint fails to allege any facts showing that Bernal was aware of "any jail

25   policies or practices creating a serious risk to which [Decedent] was exposed" because Bernal was

26   elected Sheriff of the County of Monterey in November 2014 and took office on December 31,

27   2014—19 days before Decedent's arrest.  County Mot. at 4-5; *see also* Decl. of Michael Philippi,

28

     Case No. 16-CV-00945-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1   ECF No. 23-1 ("Steve Bernal was elected Sheriff of Monterey County in November 2014 . . .

2   Steve Bernal was sworn in as Sheriff of Monterey County on December 31, 2014.").[2]

3          In California, the sheriff is required by statute to "take charge of and be the sole and

4   exclusive authority to keep the county jail and the prisoners in it."  Cal. Gov. Code § 26605;

5   *Redman*, 942 F.2d at 1446.  In *Redman*, the Ninth Circuit held that a county sheriff in California

6   could be found to have been deliberately indifferent where the sheriff "knew or reasonably should

7   have known of the overcrowding at a facility under his administration and . . . he acquiesced in a

8   deficient policy that was a moving force" behind the prisoner's alleged constitutional violation.

9   *Redman*, 942 F.2d at 1447-48.  Similarly, in *Starr*, the Ninth Circuit held that a sheriff's

10  "knowledge of the unconstitutional conditions in the jail, including his knowledge of the culpable

11  actions of his subordinates, coupled with his inaction, amounted to acquiescence in the

12  unconstitutional conduct of his subordinates."  *Starr*, 652 F.3d at 1208.

13         In the instant case, Plaintiffs have alleged that Bernal had notice of the deficient provision

14  of medical care in the Monterey County Jail as a result of the following: (1) a needs assessment

15  performed by an outside consulting firm in 2007 and updated in 2011 that found "that chronic

16  understaffing hinders County of Monterey's ability to provide medical care" and that the "County

17  of Monterey and CFMG maintain insufficient numbers of health care professionals to provide

18  adequate care to the more than 900 inmates," Compl. ¶ 36 & Ex. 1; (2) a class action lawsuit filed

19  against the County of Monterey, the Monterey County Sheriff's Office, and CFMG in 2013 that

20  alleged, *inter alia*, that the Monterey County Jail's policies and procedures for inmates in need of

21

22  [2] In ruling on a 12(b)(6) motion to dismiss, the Court may "consider certain materials—documents
    attached to the complaint, documents incorporated by reference in the complaint, or matters of
23  judicial notice—without converting the motion to dismiss into a motion for summary judgment."
    *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Although the County Defendants do
24  not request that the Court take judicial notice of the Philippi Declaration, the Court notes that
    Plaintiffs have also relied upon the Philippi Declaration in their opposition to the County
25  Defendants' motion.  *See* County Opp. at 10.  Furthermore, the Court concludes that the Philippi
    Declaration, which discusses the results of the November 2014 Monterey County elections, is a
26  proper subject of judicial notice.  *See Badillo v. City of Stockton, Cal.*, 956 F.2d 884, 887 n.1 (9th
    Cir. 1992) ("[E]lection results are an appropriate subject of judicial notice.").  Accordingly, the
27  Court may consider the Philippi Declaration in ruling on the County Defendants' 12(b)(6) motion
    to dismiss without converting the motion to a motion for summary judgment.

28

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1    opiate detoxification constituted deliberate indifference, *id.* ¶¶ 37, 39-40; and (3) an audit

2    performed by the Monterey County Civil Grand Jury in 2014 and 2015 that identified problems in

3    the Monterey County Jail's provision of medical services to inmates, including that "inmate health

4    and welfare (safety checks) are frequently missed or skipped or not adequately documented," *id.*

5    ¶ 38.

6            The Court concludes that these allegations are sufficient to allege that Bernal "knew or

7    reasonably should have known" of the deficient medical care provided to inmates at the Monterey

8    County Jail.  *Redman*, 942 F.2d at 1447-48.  In particular, the Court notes that when Bernal was

9    elected Sheriff in November 2014 and when Bernal took office as Sheriff on December 31, 2014,

10   the Monterey County Sheriff's Office was not only a named defendant in the *Hernandez* litigation

11   but was also opposing a pending motion for a preliminary injunction.  *See Hernandez*, 13-cv-

12   02354-BLF, Dkt. Nos. 108 (motion for preliminary injunction), 325 (Monterey County Sheriff's

13   Office's opposition to motion for preliminary injunction).  The motion for preliminary injunction

14   argued, *inter alia*, that "[a]ll prisoners who are detoxifying should be, but are not, examined by a

15   physician as soon as possible after being placed in a sobering cell;" "[t]he Jail does not reliably

16   monitor prisoners as they detoxify;" and "[t]he Jail also utilizes a single drug protocol for alcohol,

17   benzodiazepine, and opiate withdrawal, even though these are distinct conditions requiring

18   different medications and dosing periods for each."  *Id.* Dkt. No. 108-2 at 11-13.  As Plaintiffs in

19   the instant case note in their complaint, Magistrate Judge Paul Grewal, who presided over the

20   *Hernandez* litigation before he resigned from the Court, granted the motion for preliminary

21   injunction in April 2015, holding that the "jail does not reliably monitor inmates as they detoxify,"

22   fails to follow its policy "that nurses consult with a physician if a patient displays any one of eight

23   abnormal signs," and "practices a single drug protocol for alcohol, benzodiazepine and opiate

24   withdrawal, even though these are distinct conditions requiring different medications and dosing

25   periods for each."  *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 949-50 (N.D. Cal. 2015);

26   *see also* Compl. ¶ 39 (quoting *Hernandez* preliminary injunction order).  Judge Grewal

27   accordingly ordered the County of Monterey, the Monterey County Sheriff's Office, and CFMG to

28
     15
     Case No. 16-CV-00945-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1     ensure that "[m]edical providers . . . shall be timely involved in assessing and treating inmates

2     potentially undergoing withdrawal" and to "develop separate treatment protocols for opiate,

3     alcohol and benzodiazepine withdrawal."  *Hernandez*, 110 F. Supp. 3d at 959; *see also* Compl.

4     ¶ 40 (quoting preliminary injunction order).

5            Given that the Monterey County Sheriff's Office is a defendant in the *Hernandez* litigation

6     and was opposing a preliminary injunction regarding the same policies and procedures that

7     Plaintiffs allege constitute deliberate indifference at the time Bernal was elected to and took office

8     as Sheriff of Monterey County, the Court concludes that Plaintiffs have pled facts from which the

9     Court may reasonably infer that when Bernal became Sheriff, Bernal knew or should have known

10    about the allegedly deficient policies and procedures for inmates in need of detoxification.

11    Therefore, the Court DENIES the County Defendants' motion to dismiss the Section 1983 claims

12    against Bernal.  *See Redman*, 942 F.2d at 1447-48 (holding that a county sheriff in California

13    could be found to have been deliberately indifferent where the sheriff "knew or reasonably should

14    have known of the overcrowding at a facility under his administration and . . . he acquiesced in a

15    deficient policy that was a moving force").

16           **4.  The CFMG Defendants**

17           The CFMG Defendants move to dismiss Plaintiffs' Section 1983 claims against CFMG

18    and Kaupp on the grounds that: (1) Plaintiffs do not allege "any specific facts" regarding what

19    CFMG's policies and procedures were that constituted deliberate indifference; (2) Plaintiffs do not

20    allege "what specific actions" Kaupp took that constituted deliberate indifference; and (3)

21    Plaintiffs do not allege "the causal relationship between any action or omission by any defendant

22    and decedent's death."  CFMG Mot. at 9.  The CFMG Defendants further argue that Plaintiffs

23    have not stated a substantive due process claim for deprivation of the parent-child relationship

24    because "Plaintiffs' allegations do not identify Defendants' alleged conscience-shocking

25    behavior."  *Id.* ¶ 10.

26           The Court concludes that the CFMG Defendants' arguments are unfounded in light of the

27    allegations in the complaint.  As to CFMG, the complaint alleges that, since at least 2007, CFMG

28

United States District Court
Northern District of California

16

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1   has maintained "insufficient numbers of health care professionals to provide adequate care to the

2   more than 900 inmates" and that the "available health staff is insufficient to provide medical

3   evaluations, monitoring, and follow-up care to inmates who are suffering from serious and chronic

4   illnesses, or to treat inmates on an emergency basis."  Compl. ¶ 36.  Plaintiffs allege that CFMG

5   "does not reliably monitor inmates as they detoxify," and that although CFMG knew "that

6   physicians are supposed to see all withdrawing patients within 24 hours, . . . this also did not

7   happen." *Id.* ¶ 39 (quoting *Hernandez*, 110 F. Supp. 3d at 949).  Plaintiffs allege that CFMG

8   "practices a single drug protocol for alcohol, benzodiazepine and opiate withdrawal, even though

9   these are distinct conditions requiring different medications and dosing periods for each." *Id.*

10  (quoting *Hernandez*, 110 F. Supp. 3d at 950).

11          Opiate withdrawal constitutes a serious medical need requiring appropriate medical care

12  under the Eighth Amendment.  *Hernandez*, 110 F. Supp. 3d at 948; *see also Foelker v. Outagamie*

13  *Cty.*, 394 F.3d 510, 513 (7th Cir. 2005) (finding opiate withdrawal amounts to a serious medical

14  need); *Gonzalez v. Cecil Cty.*, 221 F. Supp. 2d 611, 616 (D. Md. 2002) (finding heroin withdrawal

15  is a serious medical need).  Thus, CFMG's alleged medically inappropriate medication protocols

16  for opiate withdrawal "may constitute deliberate indifference to a serious healthcare need."

17  *Hernandez*, 110 F. Supp. 3d at 948; *see also Gonzalez*, 221 F. Supp. 2d at 617 (holding that a

18  policy of refusing meaningful treatment for heroin withdrawal could support a finding of

19  deliberate indifference).  Additionally, "[i]nadequate staffing can create an objective risk of

20  substantial harm in a prison setting that is sufficient to satisfy the objective prong of the deliberate

21  indifference test." *Lemire*, 726 F.3d at 1076.  Moreover, Plaintiffs allege that CFMG was on

22  notice of their inadequate staffing and the deficiency of their policies for detoxifying inmates as a

23  result of the 2007 and 2011 needs assessments and the *Hernandez* litigation, which commenced in

24  2013. *Id.* ¶¶ 33-37.  Despite CFMG's knowledge of its allegedly deficient policies, Plaintiffs

25  allege that CFMG did not change its policies for detoxification until at least April 2015, when

26  Judge Grewal entered a preliminary injunction in *Hernandez*. *Id.* ¶ 40.

27          Furthermore, Plaintiffs have alleged that CFMG's deficient policies led to Decedent's

28
Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1   death.  Plaintiffs allege that CFMG "ignored their legal obligations to treat and monitor

2   [Decedent's] drug/opiate detoxification;" "failed to conduct any health screenings, to have

3   [Decedent] evaluated by a doctor or nurse practitioner, to take appropriate measures to treat

4   [Decedent's] detoxification, to appropriately monitor [Decedent's] health, to administer

5   [Decedent's] medications and treatment as ordered, to immediately place [Decedent] in a sobering

6   cell, or to conduct welfare checks every fifteen minutes."  Compl. ¶ 67.  Plaintiffs additionally

7   alleged that Decedent "died a wholly preventable death" as a result of CFMG's "actions and

8   omissions" pursuant to their policies.  *Id.* ¶ 68.  The Court concludes that, based on the allegations

9   in the complaint, it was "reasonably foreseeable" that CFMG's deficient policies for managing

10   opiate detoxification would lead to the alleged deficient treatment of Decedent's detoxification

11   and Decedent's subsequent death.  *See Wong*, 373 F.3d at 966.

12        As for Kaupp, Plaintiffs allege that Kaupp checked on Decedent at 1 p.m. on January 20,

13   2015.  Compl. ¶ 60.  At the time, Decedent was in a sobering cell for opiate detoxification with

14   instructions that his vital signs be taken throughout the day.  *Id.* ¶¶ 55, 58.  CFMG's report of

15   Decedent's condition indicated that Decedent had vomited in his cell overnight and that at 8:30

16   a.m. Decedent had been "laying on the cell floor."  *Id.* ¶ 59.  No one had assessed Decedent since

17   8:30 a.m.  *Id.* ¶ 60.  When Kaupp checked on Decedent at 1 p.m., Kaupp found Decedent still

18   lying on the floor and stating that "he can't move."  *Id.*  Plaintiffs allege that, despite the fact that

19   Kaupp knew Decedent was to be monitored for opiate detoxification, had vomited in his cell, and

20   was lying on the floor stating that he could not move, Kaupp left Decedent at 1 p.m. without

21   checking Decedent's vital signs.  *Id.*  Decedent was pronounced dead at 2:53 p.m., less than two

22   hours after Kaupp left Decedent.  *Id.* ¶ 66.  These allegations of the failure by Kaupp, a nurse, to

23   provide any medical assistance to Decedent or to check Decedent's vital signs as directed despite

24   Decedent's serious medical need are sufficient to allege that Kaupp acted with deliberate

25   indifference.  *See Lemire*, 726 F.3d at 1083 (holding that individual officers' failure to administer

26   life-saving treatment despite an obvious need can constitute deliberate indifference).  Furthermore,

27   based on the allegations in the complaint, it was "reasonably foreseeable" that Kaupp's failure to

28

United States District Court
Northern District of California

18

1   to render medical assistance to Decedent or check Decedent's vital signs at 1 p.m. would lead to

2   substantial harm to Decedent and Decedent's subsequent death. *See Wong*, 373 F.3d at 966.

3          Finally, "[j]ust as the deliberate indifference of prison officials to the medical needs of

4   prisoners may support Eighth Amendment liability, such indifference may also 'rise to the

5   conscience-shocking level' required for a substantive due process violation." *Lemire*, 726 F.3d at

6   1075. "A prison official's deliberately indifferent conduct will generally 'shock the conscience'

7   so as long as the prison official had time to deliberate before acting or failing to act in a

8   deliberately indifferent manner." *Id.* In the instant case, the CFMG Defendants do not argue that

9   either CFMG Defendant lacked the time to deliberate before acting or failing to act. Indeed, the

10  complaint alleges that CFMG was on notice of its deficient policies as early as 2007—more than 7

11  years before Decedent's death. Compl. ¶ 33. Thus, because Plaintiffs have sufficiently alleged

12  that the CFMG Defendants were deliberately indifferent to Decedent's serious medical need,

13  Plaintiffs have also alleged "conscience-shocking" conduct as required for Plaintiffs' claim for

14  substantive due process violations. *See Lemire*, 726 F.3d at 1085 (holding that the existence of a

15  triable fact regarding deliberate indifference by prison officials meant that there was "also a triable

16  issue of fact as to whether their actions rose to the conscience-shocking level required for a

17  Fourteenth Amendment substantive due process violation").

18         Therefore, the Court DENIES the CFMG Defendants' motion to dismiss Claims 2, 3, and 4

19  for violation of 42 U.S.C. § 1983 as to the CFMG Defendants.

20  **B. Claim 5: Medical Malpractice**

21         Claim 5 is a claim for medical malpractice against Defendants County, CFMG, and Kaupp.

22  The CFMG Defendants move to dismiss Plaintiffs' medical malpractice claim as to the CFMG

23  Defendants on the grounds that Plaintiffs have failed to allege a "compensable injury" under Cal.

24  Code of Civ. Proc. § 377.34. CFMG Mot. at 12-14. Section 377.34 provides:

25              In an action or proceeding by a decedent's personal representative or
                successor in interest on the decedent's cause of action, the damages
26              recoverable are limited to the loss or damage that the decedent
                sustained or incurred before death, including any penalties or
27              punitive or exemplary damages that the decedent would have been

28
    Case No. 16-CV-00945-LHK
    ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    entitled to recover had the decedent lived, and do not include
     damages for pain, suffering, or disfigurement.

2  California courts have explained that § 377.34 precludes plaintiffs in a survival action from

3  recovering damages for pain, suffering, or emotional distress suffered by the decedent.  *See, e.g.*,

4  *Garcia v. Sup. Ct.*, 42 Cal. App. 4th 177, 182–85 (Ct. App. 1996) ("[T]he statute does not permit

5  the estate to recover specific damages for decedent's pain and suffering, [however,] California law

6  permits the estate representative to seek punitive damages for the violation of decedent's rights.").

7  According to the CFMG Defendants, because Plaintiffs cannot recover damages for Decedent's

8  pain and suffering, Plaintiffs have failed to identify any compensable damages as required to plead

9  a claim for relief under California law.  *See Chakalis v. Elevator Solutions, Inc.*, 205 Cal. App. 4th

10 1557, 1571 (2012) (the elements of a medical malpractice claim are "(1) a duty to use such skill,

11 prudence, and diligence as other members of the profession commonly possess and exercise, (2) a

12 breach of the duty, (3) a proximate causal connection between the negligent conduct and the

13 injury, and (4) resulting loss or damage").  The gravamen of the CFMG Defendants' argument is

14 that Plaintiffs' medical malpractice claim requires Plaintiffs to allege damages, and that Plaintiffs

15 have failed to allege recoverable damages.

16       In opposition to Defendants' argument, Plaintiffs contend that Plaintiffs may recover

17 punitive damages even without actual damages, and that the recovery of punitive damages is

18 sufficient to satisfy the damages requirement of Plaintiffs' medical malpractice claim.  CFMG

19 Opp. at 15-16.  However, "California courts have long interpreted [California Civil Code] Section

20 3294 [which governs the award of punitive damages] to require an award of compensatory

21 damages, even if nominal, to recover punitive damages."  *California v. Altus Finance S.A.*, 540

22 F.3d 992, 1001 (9th Cir. 2008) (citing *Mother Cobb's Chicken Turnovers, Inc. v. Fox*, 10 Cal. 2d

23 203 (1937)).  To the extent Plaintiffs rely on California Court of Appeal decisions to the contrary,

24 the Court notes that it is bound by the California Supreme Court's decision in *Mother Cobb's*,

25 which the Ninth Circuit cited approvingly as controlling law in *Altus Finance*. *See, e.g.*, *Sram*

26 *Corp. v. Shimano, Inc.*, 25 F. App'x 626 (9th Cir. 2002) ("[F]ederal courts are bound by the

27 pronouncements of the state's highest court on applicable state law.").  The Court therefore

28

United States District Court
Northern District of California

20

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1    concludes that California law requires the recovery of compensatory damages, even if nominal, to

2    support the recovery of punitive damages.

3           Here, Plaintiffs fail to identify any actual or compensatory damages, even if nominal, that

4    could serve as a predicate for the award of punitive damages for Plaintiffs' medical malpractice

5    claim as to the CFMG Defendants.  As the Court concludes that California law requires an award

6    of compensatory damages in order to recover punitive damages, the Court agrees with the CFMG

7    Defendants that Plaintiffs have failed to identify or plead any recoverable damages for Plaintiffs'

8    medical malpractice claim.  As it is possible that Plaintiffs could amend their claim to plead

9    recoverable damages, the Court GRANTS without prejudice the CFMG Defendants' motion to

10   dismiss Claim 5 for medical malpractice on this ground.

11          The Court additionally sua sponte DISMISSES Plaintiffs' medical malpractice claim as to

12   the County because Plaintiffs have failed to identify or plead any recoverable damages for

13   Plaintiffs' medical malpractice claim against the County.  As it is possible that Plaintiffs could

14   amend their claim to plead recoverable damages, the dismissal is without prejudice.

15   **C. Claim 6: Failure to Summon Medical Care**

16          Claim 6 alleges that Defendants County, Bernal, King City, Orozco, CFMG, and Kaupp

17   violated California Government Code § 845.6 for failure to summon medical care.  The County

18   Defendants, the CFMG Defendants, and the King City Defendants each move to dismiss Claim 6.

19          Under California Government Code § 845.6, public entities and public employees are

20   generally not "liable for injury proximately caused by the failure of the employee to furnish or

21   obtain medical care for a prisoner in his [or her] custody."  Cal. Gov't Code § 845.6.  However,

22   public entities and public employees are liable for injuries proximately caused to prisoners where:

23   (1) "the employee is acting within the scope of his [or her] employment," (2) "the employee

24   knows or has reason to know that the prisoner is in need of immediate medical care," and (3) "he

25   [or she] fails to take reasonable action to summon such medical care."  *Id.*

26          Nonetheless, once an inmate is receiving medical care, Section 845.6 does not create a

27   duty to provide adequate or appropriate care.  *Watson v. California*, 21 Cal. App. 4th 836, 841–

28
     Case No. 16-CV-00945-LHK
     ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1    843 (1993).  It is not a violation of § 845.6 to fail "to provide further treatment, or to ensure

2    further diagnosis or treatment, or to monitor [the prisoner] or follow up on his progress."

3    *Castaneda v. Dep't Corrs. & Rehab.*, 212 Cal. App. 4th 1051, 1072 (2013).  California courts

4    have held that § 845.6 does not impose an obligation to provide necessary medication or

5    treatment, *Nelson*, 139 Cal. App. 3d at 81, nor does the duty to summon immediate medical care

6    pursuant to § 845.6 encompass a duty to assure that medical staff properly diagnose and treat the

7    condition or a duty to monitor the quality of care provided.  *Watson*, 21 Cal. App. 4th at 841–843.

8    Thus, once a prisoner is receiving medical care, prison employees are under no further obligation

9    under § 845.6.

10        However, prison officials may be liable for their employees' failure to summon medical

11   care.  California Government Code § 845.6 permits claims against such prison officials for

12   negligent supervision and training as to when to summon medical care.  *See Resendiz v. Cty. of

13   Monterey*, No. 14-CV-05495-LHK, 2015 WL 3988495, at *8 (N.D. Cal. June 30, 2015) ("[T]he

14   Court concludes that Plaintiffs may state claims for negligent supervision and wrongful death

15   pursuant to Cal. Gov't Code § 845.6.").  To do so, however, Plaintiffs still must allege facts

16   showing that "a public employee, acting within the scope of his or her employment, failed to take

17   reasonable action to summon medical care."  *Id.*

18        **1.  The County Defendants**

19        The County Defendants argue that Plaintiffs have failed to state a claim for failure to

20   summon medical care as to the County Defendants because Plaintiffs challenge the quality of the

21   medical care provided to Decedent, not whether medical care was summoned.  County Mot. at 9.

22   Plaintiffs argue in opposition that the following allegations in the complaint show a failure to

23   summon medical care by the County Defendants: (1) "custody staff did not put [Decedent] in a

24   sobering cell for more than 10 hours," County Opp. at 12-13 (citing Compl. ¶ 58); (2) "[c]ustody

25   staff also never had [Decedent] see a doctor," County Opp. at 13 (citing Compl. ¶ 55); (3)

26   "[c]ustody [sic] also violated their own policy by repeatedly failing to check [Decedent] every 15

27   minutes," County Opp. at 13 (citing Compl. ¶ 61); (4) "[c]ustody staff also told Defendant Kaupp

28
                                           22

United States District Court
Northern District of California

that she should not believe [Decedent] when he was laying on the floor in his cell saying that he could not move and pleading for help," County Opp. at 13 (citing Compl. ¶ 60); and (5) "after custody staff eventually discovered [Decedent] unconscious and face down in a pool of his own vomit, they waited more than four minutes to provide him with any assistance and emergency medical personnel did not arrive until nine minutes later," County Opp. at 13 (citing Compl. ¶¶ 62-65).

The first three allegations that Plaintiffs argue show the County Defendants' failure to summon medical care—delaying placing Decedent in a sobering cell, not having Decedent seen by a doctor, and not checking on Decedent every 15 minutes—all relate to the *quality* of the care Decedent received once he was placed on detoxification by CFMG, not to whether any care was provided. Indeed, the complaint alleges that Decedent arrived at the Monterey County Jail at 6:55 p.m. on January 19, 2015, and that CFMG—the County's medical care provider—performed an "Intake Triage Assessment" of Decedent at 7:00 p.m. Compl. ¶¶ 53, 55. CFMG medical staff noted in the 7:00 p.m. intake that Decedent was to be placed on "opiate detox" and given "a series of medications to be taken throughout the following days." *Id.* Thus, although Plaintiffs allege that the quality of the care provided by CFMG was deficient, the County summoned CFMG to summon medical care to Decedent for Decedent's opiate detoxification within 5 minutes of Decedent's arrival in the Monterey County Jail. Plaintiffs do not allege or argue that this 5 minute delay between Decedent's arrival and his intake assessment by CFMG constituted a failure to summon medical care.

The fourth allegation proffered by Plaintiffs to show the County Defendants' failure to summon medical care is that several unidentified deputies told Defendant Kaupp—a CFMG nurse—that Decedent had been "walking around cell moments prior." *Id.* ¶ 60. However, at the time the deputies allegedly made this statement to Kaupp, Kaupp was present with Decedent. Plaintiffs do not allege or explain how the deputies could have failed to summon medical care when Kaupp, a CFMG nurse charged with Decedent's medical care, was physically present with Decedent at the time. *See Resendiz v. Cty. of Monterey*, No. 14-CV-05495-LHK, 2015 WL

23

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

7075694, at *9 (N.D. Cal. Nov. 13, 2015) (holding that once decedent was transferred to the jail infirmary and attended to by infirmary nurses, "Decedent was receiving medical care from the nurses in the infirmary, albeit medical care that Plaintiffs allege was inadequate").

Finally, Plaintiffs' argument that the unidentified deputies who found Decedent unconscious at 2:12 p.m. failed to summon medical care is unsupported by the complaint. The complaint alleges that the two deputies who found Decedent at 2:12 p.m. had a second inmate in their custody at the time they found Decedent, but that a third deputy arrived at Decedent's cell within 4 minutes and began providing emergency aid to Decedent. Compl. ¶¶ 63-65. Emergency medical personnel arrived at Decedent's cell at 2:21 p.m., less than 10 minutes after the deputies found Decedent unconscious. *Id.* ¶ 65. Thus, the allegations in the complaint show that the deputies who found Decedent unconscious *did* summon medical care, and that medical care arrived promptly. In addition, Plaintiffs do not allege that the deputies who found Decedent acted unreasonably by remaining with the second inmate in their custody while summoning another deputy and emergency medical personnel to attend to Decedent. *See* Cal. Gov't Code § 845.6 (to constitute failure to summon medical care, the public employee must "fail[] to take reasonable action to summon such medical care").

Therefore, the Court GRANTS the County Defendants' motion to dismiss Claim 6 for failure to summon medical care. As Plaintiffs may be able to allege additional facts to state a claim, the dismissal is without prejudice.

### 2. The King City Defendants

Plaintiffs' allegations regarding failure to summon medical care as to the King City Defendants focus exclusively on Defendant Orozco's delay of four hours between the time Orozco allegedly hit Decedent with Orozco's car and the time Orozco took Decedent to Natividad for medical care. Compl. ¶¶ 47, 52, 111; King City Opp. at 6-7. The King City Defendants move to dismiss Plaintiffs' failure to summon medical care claim as to the King City Defendants on the grounds that Plaintiffs have not sufficiently alleged that Orozco failed to summon medical care in response to Decedent's immediate medical need in violation of Section 845.6. King City Mot. at

24

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1   6-8. Plaintiffs argue that Plaintiffs have sufficiently alleged a violation of Section 845.6.

2       Plaintiffs allege that when Orozco arrested Decedent, "Defendant Orozco used his police

3   cruiser as a weapon to end the pursuit, driving up onto a sidewalk and slamming [Decedent] and

4   his bike into a chain link fence." Compl. ¶ 47. Plaintiffs allege that at the time of Decedent's

5   arrest, Orozco observed that Decedent "did have a medical problem which had caused his legs to

6   swell up," and that when Orozco took Decedent to the King City Police Department for booking,

7   Decedent was "in obvious distress." *Id.* ¶¶ 49, 51. Plaintiffs further allege that instead of seeking

8   immediate medical care for Decedent, Orozco "placed [Decedent] in a holding cell." *Id.* ¶ 51.

9   According to Plaintiffs, Orozco did not take Decedent to Natividad for medical care until nearly

10  four hours later. *Id.* ¶ 52. Thus, Plaintiffs allege that the King City Defendants "failed to timely

11  and appropriately respond to [Decedent's] obvious signs of medical distress . . . by waiting four

12  hours before [sic] he was hit by a car to furnish medical care." *Id.* ¶ 111. Thus, Plaintiffs have

13  alleged that Orozco knew Decedent required immediate medical care because Orozco had hit

14  Decedent with Orozco's car and because Decedent was in obvious physical distress, and that

15  Orozco nevertheless did not summon medical care for four hours. "[A]ccept[ing] factual

16  allegations in the complaint as true and constru[ing] the pleadings in the light most favorable to

17  the nonmoving party," *Manzarek*, 519 F.3d at 1031, these allegations are sufficient for the Court

18  to draw the reasonable inference that Orozco "kn[ew] that the prisoner [was] in need of immediate

19  medical care" and that he "fail[ed] to take reasonable action to summon such medical care." *See*

20  Cal. Gov't Code § 845.6.

21      Therefore, the Court DENIES the King City Defendants' motion to dismiss Claim 6 for

22  failure to summon medical care.

23      **3.  The CFMG Defendants**

24      In response to the CFMG Defendants' motion to dismiss Claim 6 for failure to summon

25  medical care, Plaintiffs state that they "withdraw and dismiss their Sixth claim only as to CFMG

26  and Kaupp." CFMG Opp. at 13. Accordingly, the Court GRANTS the CFMG Defendants'

27  motion to dismiss Claim 6 as to the CFMG Defendants with prejudice.

28

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

### D. Claim 7: Negligent Supervision, Training, Hiring, and Retention

Claim 7 alleges that Defendants County, Bernal, King City, Tony Sollecito, and CFMG are liable for negligent hiring, supervision, training, or retention. These defendants move to dismiss Claim 7. The Court has already dismissed Claim 7 as to Tony Sollecito. *See* ECF No. 59.

### 1. The County Defendants

The County Defendants argue that, pursuant to Cal. Gov't Code § 844.6, the County Defendants are immune from liability for negligent hiring, supervision, training, or retention. Contrary to the County Defendants' arguments, public agencies may be held liable for negligent hiring, supervision, training, or retention under Cal. Gov't Code § 845.6 to the extent Plaintiffs' claims are based on the County Defendants' alleged negligence in supervising and training their employees regarding the summoning of medical care. *See, e.g.*, *Estate of Claypole v. Cnty. of San Mateo*, No. 14-2730-BLF, 2014 WL 5100696, (N.D. Cal. Oct. 9, 2014) (finding Cal. Gov't Code § 845.6 could support claim against County defendant for negligent supervision and training); *Bock v. Cnty. of Sutter*, No. 11-536, 2012 WL 3778953, at *18–19 (E.D. Cal. Aug. 31, 2012) (denying motion to dismiss claims for negligent supervision and wrongful death that were based on alleged failure to summon medical care).

While Plaintiffs may be able to state a claim for negligent supervision and wrongful death under § 845.6, as discussed above, the Court concludes that Plaintiffs have failed to allege any specific facts showing that a County employee, acting within the scope of his or her employment, failed to take reasonable action to summon medical care. *See* Cal. Gov't Code § 845.6; *see also* Section III.C.1, *supra*. Plaintiffs have not pled any specific facts with respect to the County Defendants' alleged negligence in hiring, supervising, or training any employee or individual for whom the County Defendants could be held responsible. Merely alleging that "Defendants had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or omissions alleged herein," Compl. ¶ 116, and that Defendants "breached this duty," *id.* ¶ 117, is insufficient. *See Fayer*, 649 F.3d at 1064 (noting that the Court does not have to "assume the truth of legal conclusions merely because they are cast in the form of

26

United States District Court
Northern District of California

factual allegations").  While Plaintiffs need not "prove the case on the pleadings," Plaintiffs must

allege "more than conclusions" and a "lack of access to evidence" cannot save implausible claims.

*OSU Student Alliance v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012) (quoting *Iqbal*, 129 S. Ct. at

1950).

As the Court finds that amendment would not necessarily be futile, the Court GRANTS

without prejudice the County Defendants' motion to dismiss Plaintiffs' Claim 7 for negligent

supervision.

### 2.  CFMG

The CFMG Defendants move to dismiss Plaintiffs' claim for negligent supervision against

CFMG on two bases.

First, the CFMG Defendants argue that "[t]here is not a single factual allegation in the

complaint regarding CFMG's hiring practices or criteria, much less specific facts regarding a

particular employee posing a 'particular risk or hazard' to the provision of medical care at the

County Jail."  CFMG Mot. at 11.  Plaintiffs argue that the complaint sufficiently alleges that

CFMG provided negligent supervision and training to CFMG staff at the Monterey County Jail.

CFMG Opp. at 14.  The Court agrees that Plaintiffs have alleged specific facts regarding CFMG's

allegedly negligent supervision and training.

For example, the complaint alleges that CFMG maintains "insufficient numbers of health

care professionals" and that "[t]he available health care staff is insufficient to provide medical

evaluations, monitoring, and follow-up care to inmates who are suffering from serious and chronic

illnesses, or to treat inmates on an emergency basis."  Compl. ¶ 36.  The complaint includes

allegations that CFMG fails in particular to provide physician supervision to the nurses who

oversee management of inmates' drug withdrawal syndromes, such that "nursing staff—not

physicians—decide whether to medicate a withdrawing inmate."  *Id.* ¶ 39.  The complaint alleges

that CFMG does not ensure that medical staff make "initial evaluations and placement of persons

into sobering or detoxification cells," and instead "a nurse does not conduct an assessment until

*after* custody staff has placed the inmate in the sobering cell and notified medical staff."  *Id.*

27

United States District Court
Northern District of California

United States District Court
Northern District of California

1  Plaintiffs further allege that CFMG does not enforce its policy "that nurses consult with a

2  physician if a patient displays anyone [sic] of eight abnormal signs."  *Id.*  Thus, the Court

3  concludes that Plaintiffs have made factual allegations to support Plaintiffs' claim for negligent

4  supervision and training.

5       Second, CFMG argues that Claim 7 should be dismissed as to the CFMG Defendants

6  because Plaintiffs have not alleged any "compensable injury for which they can recover" pursuant

7  to Plaintiffs' claim for negligent supervision.  CFMG Mot. at 7; *see C.A. v. William S. Hart Union*

8  *High Sch. Dist.*, 53 Cal. 4th 861, 876 (2012) (the elements of a claim for negligent supervision

9  include damages caused by the allegedly negligent supervision).  The parties raise the same

10 arguments with regard to compensable injury for Plaintiffs' negligent supervision cause of action

11 as with Plaintiffs' medical malpractice cause of action.  Specifically, Plaintiffs argue that Plaintiffs

12 may seek punitive damages without stating a claim for actual or compensatory damages.  CFMG

13 Opp. at 15-16.  However, California law requires an award of compensatory damages, even if

14 nominal, in order to recover punitive damages.  *Altus Finance S.A.*, 540 F.3d at 1001.  As with

15 Plaintiffs' medical malpractice claim, Plaintiffs allege no actual or compensatory damages with

16 regard to their negligent supervision claim.  As the Court finds that amendment would not be

17 futile, the Court GRANTS the CFMG Defendants' motion to dismiss Claim 7 for negligent

18 supervision as to CFMG with leave to amend.  *See* Section III.B, *supra*.

19      **3.  King City**

20      The King City Defendants move to dismiss Plaintiffs' claim for negligent supervision as to

21 King City on the grounds that King City is immune from liability under Cal. Gov't Code § 815.

22 Defendants are correct that Cal. Gov't Code § 815 establishes the general rule that public entities

23 are "not liable for an injury, whether such injury arises out of an act or omission of the public

24 entity or a public employee or any other person," unless liability is established by statute.

25 However, Plaintiffs' claims nevertheless are viable under Cal. Gov't Code § 845.6 to the extent

26 Plaintiffs' claims are based on Defendants' alleged negligence in supervising and training their

27 employees regarding the summoning of medical care. *See* Section III.C, *supra*.

28

28

1       In the instant case, Plaintiffs have alleged that King City was negligent in supervising and

2  training their employees regarding the summoning of medical care.  Specifically, as discussed

3  above, *see* Section III.C.2, *supra*, Plaintiffs have alleged that Defendant Orozco—a King City

4  employee—failed to summon medical care to Decedent in violation of Cal. Gov't Code § 845.6.

5  Furthermore, Plaintiffs have alleged that Orozco's failure to summon medical care was due to

6  King City's "failure to promulgate appropriate policies and procedures in order to provide

7  treatment to persons injured during arrests and who require detoxification, and failure to

8  appropriately train and/or supervise their staff."  Compl. ¶ 93.

9       The King City Defendants argue for the first time in their reply brief that "King City's

10  alleged negligent supervision, training, hiring, and/or retention was not an actual and/or proximate

11  cause of [Decedent's] death."  King City Reply at 6.  However, as the Ninth Circuit has noted,

12  "[i]t is well established . . . that [parties] cannot raise a new issue for the first time in their reply

13  briefs." *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).  Accordingly, the Court

14  cannot consider arguments that were raised for the first time in reply.

15       Therefore, the Court DENIES the King City Defendants' motion to dismiss Plaintiffs'

16  Claim 7 for negligent supervision and training as to Defendant King City.

17  **E.  Claim 10: Wrongful Death**

18       Claim 10 is a claim for wrongful death brought against Defendants County of Monterey,

19  Bernal, and CFMG.  These defendants move to dismiss Claim 10.

20      **1.  The County Defendants**

21       The County Defendants argue that they are immune from liability on Plaintiffs' wrongful

22  death claim pursuant to Cal. Gov't Code §§ 844.6 and 845.6.  As with Plaintiffs' claim for

23  negligent supervision and training, Section 845.6 provides that Plaintiffs' wrongful death claim

24  against the County Defendants is viable to the extent it is based on the County Defendants' alleged

25  failure to summon medical care to Decedent.  *See Bock*, 2012 WL 3778953, at *18-19 (denying

26  motion to dismiss claims against a public entity for negligent supervision and wrongful death that

27  were based on alleged failure to summon medical care).

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1       However, as described above, *see* Section III.C.1, *supra*, Plaintiffs have not alleged that

2 the County Defendants failed to summon medical care in violation of Section 845.6.  As the Court

3 concludes that amendment would not necessarily be futile, the County Defendants' motion to

4 dismiss Claim 10 for wrongful death as to the County Defendants is GRANTED without

5 prejudice.

6      **2.   CFMG**

7       The CFMG Defendants move to dismiss Plaintiffs' wrongful death claim as to CFMG

8 because "Plaintiffs have failed to plead a statutory cause of action under relevant federal pleading

9 standards."  CFMG Mot. at 12.  Plaintiffs argue, and the CFMG Defendants do not dispute, that a

10 claim for wrongful death may be premised on deliberate indifference to medical needs.  CFMG

11 Opp. at 15; CFMG Reply at 8; *Estate of Prasad v. Cty. of Sutter*, 958 F. Supp. 2d 1101, 1118

12 (E.D. Cal. 2013) ("Here, Plaintiffs allege that each of the [defendants] were deliberately

13 indifferent to [the decedent's] serious medical needs, and that their deliberate indifference caused

14 [the decedent's] preventable death.  These allegations suffice to state a claim for wrongful

15 death.").  As described above, *see* Section III.A.4, *supra*, Plaintiffs have alleged that CFMG was

16 deliberately indifferent to Decedent's serious medical needs, and that CFMG's deliberate

17 indifference caused Decedent's death.  Therefore, the Court DENIES the CFMG Defendants'

18 motion to dismiss Plaintiff's wrongful death claim as to CFMG.

19     **F.   Claim 11: Negligence**

20       Plaintiffs' Claim 11 is a claim for negligence against Defendants County, Bernal, King

21 City, Tony Sollecito, Orozco, CFMG, and Kaupp.  The Court has already dismissed Claim 11 as

22 to Tony Sollecito.  *See* ECF No. 59.  The County Defendants and the CFMG Defendants move to

23 dismiss Claim 11 as to the County and CFMG Defendants.

24      **1.   The County Defendants**

25       The County Defendants move to dismiss Plaintiffs' negligence claim against the County on

26 the grounds that the County is immune from negligence liability under Cal. Gov't Code §§ 844.6

27 and 845.6.  County Mot. at 11.  As previously discussed, *see* Section III.C.1, *supra*, Plaintiffs may

28

30

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

1    bring a claim for negligence against the County to the extent the negligence claim is based upon a

2    violation of Section 845.6 for failure to summon medical care.  However, Plaintiffs have not

3    sufficiently alleged that the County failed to summon medical care in violation of Section

4    845.6.  *See* Section III.C.1, *supra*.  Accordingly, as the Court concludes that amendment would

5    not necessarily be futile, the Court GRANTS the County Defendants' motion to dismiss Claim 11

6    as to the County with leave to amend.

7              **2.  The CFMG Defendants**

8              The CFMG Defendants move to dismiss Plaintiffs' negligence claim on the grounds that,

9    as with Plaintiff's claim for medical malpractice, Plaintiffs have not alleged any compensable

10   damages for the negligence claim under Cal. Code of Civ. Proc. § 377.34.  CFMG Mot. at 12-14;

11   *see Scott v. C.R. Bard, Inc.*, 231 Cal. App. 4th 763, 775 (2014) (the elements of a negligence

12   action are duty, breach of duty, proximate cause, and damages).  Under Section 377.34, Plaintiffs

13   must allege actual or compensatory damages, even if nominal, in order to seek punitive damages

14   on behalf of Decedent.  *See* Section III.B, *supra*; *Altus Finance S.A.*, 540 F.3d at 1001(California

15   law requires an award of compensatory damages, even if nominal, in order to recover punitive

16   damages).  However, Plaintiffs fail to identify any actual or compensatory damages related to

17   Plaintiffs' claim for negligence.  Therefore, as the Court concludes that amendment would not

18   necessarily be futile, the Court GRANTS the CFMG Defendants' motion to dismiss with leave to

19   amend.

20             The Court additionally sua sponte DISMISSES Plaintiffs' negligence claim as to

21   Defendants King City and Orozco because Plaintiffs have failed to identify or plead any

22   recoverable damages for Plaintiffs' negligence claim.  As it is possible that Plaintiffs could amend

23   their claim to plead recoverable damages, the dismissal is without prejudice.

24   **IV.    CONCLUSION**

25             For the foregoing reasons, the following claims are dismissed with prejudice:

26   •  Claim 1 for violation of 42 U.S.C. § 1983 as to Defendant King City Police Department;

27   •  Claim 4 for violation of 42 U.S.C. § 1983 as to Defendant King City Police Department;

28
Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1   • Claim 6 for failure to summon medical care as to Defendants CFMG and Kaupp.

2   The Court GRANTS Plaintiffs leave to amend to name Defendant King City in place of Defendant

3   King City Police Department in Claims 1 and 4.

4        The following claims are dismissed with leave to amend:

5   • Claim 5 for medical malpractice as to Defendants County, CFMG and Kaupp;

6   • Claim 6 for failure to summon medical care as to Defendants County and Bernal;

7   • Claim 7 for negligent supervision, training, hiring, and retention as to Defendants County,

8      Bernal, and CFMG;

9   • Claim 10 for wrongful death as to Defendants County and Bernal;

10  • Claim 11 for negligence as to Defendants County, Bernal, CFMG, Kaupp, King City, and

11     Orozco.

12       The Court denies Defendants' motions to dismiss as to the remaining claims and

13  Defendants as set forth below:

14  • Claims 2, 3, and 4 for violation of 42 U.S.C. § 1983 as to Defendants Bernal, CFMG, and

15     Kaupp;

16  • Claim 6 for failure to summon medical care as to Defendants King City and Orozco;

17  • Claim 7 for negligent supervision, training, hiring, and retention as to Defendant King City;

18  • Claim 10 for wrongful death as to Defendant CFMG.

19       In addition, the following claims were not challenged by any of the motions to dismiss and

20  remain in the instant litigation:

21  • Claims 1, 3, and 4 for violation of 42 U.S.C. § 1983 as to Defendant Orozco;

22  • Claims 2, 3, and 4 for violation of 42 U.S.C. § 1983 as to Defendant County;

23  • Claims 3 and 4 for violation of 42 U.S.C. § 1983 as to Defendant King City;

24  • Claim 8 for violation of Cal. Civil Code § 52.1 as to Defendants King City and Orozco;

25  • Claim 9 for battery as to Defendants King City and Orozco.

26       Should Plaintiffs elect to file an amended complaint curing the deficiencies identified

27  herein, Plaintiffs shall do so within 30 days.  Failure to file an amended complaint within 30 days

28

32

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS

United States District Court
Northern District of California

1 | or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice of

2 | the claims dismissed in this Order.  Plaintiffs may not add new causes of actions or parties without

3 | leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

4 | **IT IS SO ORDERED.**

6 | Dated: July 8, 2016

_____
LUCY H. KOH
United States District Judge

United States District Court
Northern District of California

Case No. 16-CV-00945-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO DISMISS