UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MARK VASQUEZ PAJAS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MONTEREY, et al., <br><br> Defendants. | Case No. 16-CV-00945-LHK <br><br> **ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE** <br><br> Re: Dkt. No. 66 |

Plaintiffs Rosemary Lopez, individually and as Administrator of the Estate of Mark Vasquez Pajas, Sr.; Yvette Pajas; Mark Pajas, Jr.; Janel Pajas; and Xavier Pajas (collectively, "Plaintiffs"), successors in interest to Mark Vasquez Pajas, Sr. ("Decedent"), allege that Defendants County of Monterey, Steve Bernal, King City, King City Police Department, Steve Orozco, California Forensic Medical Group, Inc. ("CFMG"), and Christina Kaupp are liable under federal and state law for the death of Decedent. Before the Court is Defendants CFMG and Christina Kaupp's (the "CFMG Defendants'") Motion to Dismiss Plaintiffs' Sixth and Tenth Claims of the First Amended Complaint. ECF No. 68 ("Mot."). Having considered the parties' briefing, the relevant law, and the record in this case, the Court hereby GRANTS the CFMG Defendants' Motion to Dismiss with prejudice.

## I.      BACKGROUND

### A.      Factual Background

#### 1.      The Parties

Plaintiffs bring this action as successors in interest to Decedent Mark Vasquez Pajas, Sr. ECF No. 63 ("FAC") ¶¶ 9–14.  Plaintiff Rosemary Lopez was Decedent's wife and is the Administrator of Decedent's Estate.  *Id.* ¶¶ 9–10.  Plaintiffs Yvette Pajas and Janel Pajas are Decedent's daughters.  *Id.* ¶¶ 11, 13.  Plaintiffs Mark Pajas, Jr. and Xavier Pajas are Decedent's sons.  *Id.* ¶¶ 12, 14.

Defendant County of Monterey is a public entity organized and existing under the laws of the State of California.  *Id.* ¶ 15.  According to Plaintiffs, the County operates and manages Monterey County Jail.  *Id.*  Defendant Steve Bernal was the Sheriff of the County of Monterey at the time of Decedent's death.  *Id.* ¶ 16.  The Court refers to County of Monterey and Steve Bernal collectively as the "County Defendants."

The County contracts with Defendant CFMG to provide medical, mental health, and dental services for the Monterey County Jail.  *Id.* ¶ 19.  Defendant CFMG is a California corporation headquartered in Monterey, California.  *Id.*  Defendant Christina Kaupp, RN, is a nurse employed by CFMG at the Monterey County Jail.  *Id.* ¶ 20.

Defendant King City is a municipality organized under the laws of the State of California. *Id.* ¶ 17.  Defendant King City Police Department is an agency of King City.  *Id.*  Defendant Steve Orozco is a King City police officer.  *Id.* ¶ 18.  The Court refers to King City and Steve Orozco collectively as the "King City Defendants."

#### 2.      The Events of January 19 and 20, 2015

On January 19, 2015, Defendant Orozco allegedly observed Decedent riding a bicycle in the opposite direction of traffic in Salinas, California.  *Id.* ¶ 43.  When Decedent refused to stop in response to a verbal command from Orozco, Orozco activated his overhead emergency lights and pursued Decedent.  *Id.*  Decedent rode his bicycle onto the sidewalk.  *Id.* ¶ 47.  Plaintiffs allege that Orozco then drove onto the sidewalk and slammed Decedent and Decedent's bicycle into a

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

chain link fence. *Id.* ¶ 45.  Orozco's arrest report states that "Pajas was not hurt but he did have a medical problem which had caused his legs to swell up." *Id.* ¶ 48.  Orozco arrested Decedent at 12:12 p.m. and transported Decedent to the King City Police Department for booking.  *Id.* ¶ 49.

Decedent was initially placed in a holding cell at the King City Police Department.  *Id.* ¶ 50.  Approximately four hours after Decedent's arrest, Orozco took Decedent to the Natividad Medical Center ("Natividad").  *Id.* ¶ 51.  At Natividad, Decedent was evaluated by Dr. Daniel Wasserman.  *Id.*  Decedent informed Dr. Wasserman and a triage nurse that Decedent was addicted to heroin and that Decedent "would need help for the withdrawal symptoms he expected during his incarceration."  *Id.*  Dr. Wasserman diagnosed Decedent with cellulitis, leg swelling, and shortness of breath, and noted that Decedent suffered "[c]ongestive heart failure with not elevated BNP."  *Id.*  Dr. Wasserman medically cleared Decedent for jail at 6:30 p.m. with the instruction that if Decedent "develop[s] chest pain or shortness of breath return to the ER immediately."  *Id.*

Orozco then took Decedent to the Monterey County Jail.  *Id.* ¶ 52.  During the "Intake Health Screening" performed by the Monterey County Sheriff's Office at 6:55 p.m., Decedent reported that he had used heroin earlier that day.  *Id.* ¶ 53.  During the "Intake Triage Assessment" performed by Defendant CFMG at 7 p.m., Decedent again reported that Decedent had used "'a lot' of heroin 'earlier today' and stated, 'he is coming down and needs meds to help him.'"  *Id.* ¶ 54.  CFMG staff noted that Decedent should be placed on "opiate detox," with a specified series of medications to be taken throughout the following days and with instructions to check Decedent's vital signs throughout the day.  *Id.*  Notwithstanding the note that Decedent was to be placed on "opiate detox," Plaintiffs allege that CFMG does not have a separate treatment protocol for opiate withdrawal but instead uses a protocol for alcohol detoxification.  *Id.* ¶ 55.  Plaintiffs allege that, pursuant to CFMG's alcohol detoxification protocol, Decedent was not seen by a doctor at the jail but was instead to have a "Sick Call in 72 hours for re-evaluation."  *Id.* ¶ 56.

CFMG placed Decedent in a sobering cell at 4:17 a.m. on January 20, 2016.  *Id.* ¶ 57.  At 4:45 a.m., CFMG nursing staff assessed Decedent and reported that Decedent had vomited in his

United States District Court
Northern District of California

cell but did not take Decedent's vitals.  *Id.* ¶ 58.  CFMG nursing staff next checked on Decedent at 8:30 a.m. and found that Decedent was "laying on the cell floor" and "wants Gatorade."  *Id.* CFMG nursing staff did not take Decedent's vitals during the 8:30 a.m. check.  *Id.*  The next check-in by CFMG nursing staff was at 1:00 p.m. when Defendant Kaupp checked on Decedent. *Id.* ¶ 59.  Kaupp noted that Decedent was still lying on the floor and "stated he can't move," but Kaupp did not believe Decedent because several unidentified deputies had "witnessed [Decedent] walking around cell moments prior."  *Id.*  Kaupp did not take Decedent's vitals.  *Id.*

A little over an hour later, at 2:12 p.m., two Monterey County Sheriff's Office deputies went to place a second inmate in Decedent's sobering cell and found Decedent "face down and unconscious in a pool of his own vomit."  *Id.* ¶ 61.  The deputies first escorted the second inmate to a separate sobering cell while calling out to Decedent to solicit a response.  *Id.* ¶¶ 62–63.  At 2:16 p.m., another deputy arrived at Decedent's cell and attempted to provide emergency aid to Decedent.  *Id.* ¶ 64.  Emergency medical personnel arrived at 2:21 p.m.  *Id.*

At 2:37 p.m., Decedent was transported in "grave condition" to Natividad.  *Id.* ¶ 65.  At 2:53 p.m., Decedent was pronounced dead.  *Id.*  Plaintiffs allege that "[a]s a result of Defendants' actions and omissions, [Decedent] died a wholly preventable death."  *Id.* ¶ 67.

### 3.    Allegations against the County and CFMG

Plaintiffs further allege that the County and CFMG "have a policy and practice of failing to provide adequate medical care to inmates at Monterey County Jail, and are deliberately indifferent to the fact that their failure to do so subjects inmates to substantial risk of unnecessary suffering, serious injury and death."  *Id.* ¶ 31.  Plaintiffs allege that the County and CFMG "have been on notice that their provision of medical care to inmates is inadequate and results in needless harm since at least 2007, when the Monterey County Sheriff's Office and the Monterey County Board of Supervisors hired an outside consulting firm to perform a needs assessment" for the Monterey County Jail.  *Id.* ¶ 32.  Plaintiffs allege that the needs assessment was updated in December 2011. *Id.* ¶ 33 & Ex. 1.  The needs assessment found that the Monterey County Jail was chronically understaffed, and that chronic understaffing hinders the ability to provide adequate medical care.

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

*Id.* ¶ 34.  Specifically, Plaintiffs allege that the "available health care staff [at the Monterey County Jail] is insufficient to provide medical evaluations, monitoring, and follow-up care to inmates who are suffering from serious and chronic illnesses, or to treat inmates on an emergency basis." *Id.* ¶ 35.

In addition to the needs assessment, Plaintiffs allege that "the County of Monterey was again specifically put on notice of serious problems with detoxification and sobering treatment in the jail" via a class action lawsuit, *Hernandez v. Cty. of Monterey*, No. 5:13-CV-02354-BLF (N.D. Cal.), filed against the County of Monterey in 2013.  *Id.* ¶ 36.  Plaintiffs allege that class counsel in *Hernandez* "specifically objected to the fact that defendants' agents and staff were employing a dangerous and punitive 'detox protocol,' refusing medications to inmates who then suffered from intense, untreated pain as well as powerful, dangerous and unnecessary withdrawal symptoms." *Id.* ¶ 36.  Then, in 2014 and 2015, the Monterey County Civil Grand Jury undertook an audit of the Monterey County Jail.  *Id.* ¶ 37.  In January 2015—the same month in which Decedent died— the Monterey County Civil Grand Jury's audit found that "inmate health and welfare (safety checks) are frequently missed or skipped or not adequately documented."  *Id.* ¶ 37.

### B.    Procedural History

Plaintiffs filed their complaint on February 25, 2016.  ECF No. 1.  The complaint alleged eleven causes of action against Defendants.  *Id.*  Although not all claims were brought against all Defendants, the claims were as follows: (1) 42 U.S.C. § 1983—excessive force in violation of the Fourth Amendment, (2) 42 U.S.C. § 1983—deliberate indifference to serious medical needs in violation of the Fourteenth Amendment, (3) 42 U.S.C. § 1983—failure to protect in violation of the Fourteenth Amendment, (4) 42 U.S.C. § 1983—deprivation of substantive due process rights in violation of the First and Fourteenth Amendments, (5) medical malpractice, (6) failure to summon medical care in violation of California Government Code § 845.6, (7) negligent supervision, training, hiring, and retention, (8) violation of California Civil Code § 52.1, (9) battery, (10) wrongful death, and (11) negligence.  *Id.* ¶¶ 69–139.  The two claims most relevant to the instant motion are Claims 7 and 11.  Plaintiffs brought Claim 7 for negligent supervision,

United States District Court
Northern District of California

1   training, hiring, and retention against CFMG, among others, and Claim 11 for negligence against

2   both CFMG Defendants, CFMG and Christina Kaupp.  *Id.*

3        In April 2016, Defendants filed multiple motions to dismiss.  ECF Nos. 23, 32, 34.  The

4   County Defendants filed a motion to dismiss on April 5, 2016.  ECF No. 23.  Plaintiffs filed an

5   opposition on April 19, 2016.  ECF No. 30.  The County Defendants filed a reply on April 26,

6   2016.  ECF No. 33.

7        The CFMG Defendants filed a motion to dismiss on April 13, 2016.  ECF No. 28.

8   Plaintiffs filed an opposition on April 27, 2016.  ECF No. 34.  The CFMG Defendants filed a

9   reply on May 4, 2016.  ECF No. 35.

10       The King City Defendants filed a motion to dismiss on April 21, 2016.  ECF No. 32.

11  Plaintiffs filed an opposition on May 5, 2016.  ECF No. 36.  The King City Defendants filed a

12  reply on May 12, 2016.  ECF No. 46.

13        On July 8, 2016, the Court granted in part and denied in part each of Defendants'

14  Motions.  ECF No. 60 ("First Order"), *available as Pajas v. Cty. of Monterey*, 2016 WL 3648686

15  (N.D. Cal. July 8, 2016).  Specifically, among other rulings, the Court dismissed Claim 7 for

16  negligent supervision, training, hiring, and retention as to CFMG and Claim 11 for negligence as

17  to both CFMG Defendants.  *Id.* at 32.  Both claims were dismissed because Plaintiffs failed to

18  allege compensable damages against those defendants.  *Id.*

19        On August 5, 2016, Plaintiffs filed a First Amended Complaint ("FAC") containing ten

20  causes of action.  ECF No. 63.  Claim 6 of the FAC is an allegation of negligent supervision,

21  training, hiring, and retention against, among others, CFMG.  FAC ¶¶ 108–11.  Claim 10 is an

22  allegation of negligence against, among others, both CFMG Defendants.  FAC ¶¶ 127–33.  Claim

23  6 and Claim 10 are brought as "survival" causes of action, FAC ¶¶ 108–11, 127–33, that is,

24  Decedent's successors in interest are suing on causes of action that "belonged to the decedent

25  before death but, by statute, survive[] that event."  *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th

26  1256, 1264 (2006).

27        On August 19, 2016, the CFMG Defendants brought the instant motion to dismiss Claim 6

28

United States District Court
Northern District of California

6

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   of the FAC for negligent supervision, training, hiring, and retention as to CFMG and Claim 10 of

2   the FAC for negligence as to both CFMG Defendants.  On September 2, 2016, Plaintiffs filed a

3   response, ECF No. 68 ("Resp."), and on September 9, 2016, the CFMG Defendants filed a reply,

4   ECF No. 69 ("Reply").

5   ## II.   LEGAL STANDARD

6   ### A.   Motion to Dismiss Under Rule 12(b)(6)

7        Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a

8   short and plain statement of the claim showing that the pleader is entitled to relief."  A complaint

9   that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

10  12(b)(6).  The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough

11  facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

12  544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that

13  allows the court to draw the reasonable inference that the defendant is liable for the misconduct

14  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a

15  probability requirement, but it asks for more than a sheer possibility that a defendant has acted

16  unlawfully." *Id.* (internal quotation marks omitted).  For purposes of ruling on a Rule 12(b)(6)

17  motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings

18  in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

19  519 F.3d 1025, 1031 (9th Cir. 2008).

20       However, a court need not accept as true allegations contradicted by judicially noticeable

21  facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look

22  beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6)

23  motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

24  Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in

25  the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per

26  curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere

27  "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

28

United States District Court
Northern District of California

7

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

1   dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

2   Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that

3   [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

4   1997).

5         **B.**    **Leave to Amend**

6         If the Court determines that the complaint should be dismissed, it must then decide

7   whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

8   to amend "should be freely granted when justice so requires," bearing in mind that "the underlying

9   purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

10  technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  When dismissing

11  a complaint for failure to state a claim, "a district court should grant leave to amend even if no

12  request to amend the pleading was made, unless it determines that the pleading could not possibly

13  be cured by the allegation of other facts." *Id*. at 1130 (quoting *Doe v. United States*, 58 F.3d 494,

14  497 (9th Cir. 1995)).  Nonetheless, a court "may exercise its discretion to deny leave to amend due

15  to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure

16  deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and]

17  futility of amendment.'"  *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir.

18  2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

19  **III.**    **DISCUSSION**

20        The CFMG Defendants move to dismiss Claim 6 for negligent supervision, training,

21  hiring, and retention, and Claim 10 for negligence because the FAC does not allege "any actual or

22  compensatory damages to these survival claims."  Mot. at 2.  Under California law, claims for

23  negligent supervision, training, hiring, and retention and claims for negligence require a plaintiff

24  to allege compensable damages to state a claim for relief.  *See C.A. v. William S. Hart Union High*

25  *Sch. Dist.*, 53 Cal. 4th 861, 876 (2012) (the elements of a claim for negligent supervision include

26  damages caused by the allegedly negligent supervision); *Scott v. C.R. Bard, Inc.*, 231 Cal. App.

27  4th 763, 775 (2014) (the elements of a negligence action and negligent training action are duty,

28  
8

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

breach of duty, proximate cause, and damages).

However, where, as here, the relevant claims are brought as a survival action, California Civil Procedure Code § 377.34 limits the damages available to a decedent's successors in interest:

> In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include damages for pain, suffering, or disfigurement.

California courts have explained that § 377.34 precludes plaintiffs in a survival action from recovering damages for pain, suffering, or emotional distress suffered by the decedent. *See, e.g.*, *Garcia v. Superior Court*, 42 Cal. App. 4th 177, 182–85 (1996) ("[T]he statute does not permit the estate to recover specific damages for decedent's pain and suffering . . . ."). In fact, "[s]ection 377.34 limits damages in survival actions to the victim's pre-death economic losses." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1104 (9th Cir.), *cert. denied sub nom. City of L.A., Cal. v. Chaudhry*, 135 S. Ct. 295 (2014) (holding that the stringent limitation on damages under § 377.34 is preempted by federal law in actions brought under 42 U.S.C. § 1983). Thus, "under California's survival law, an estate can recover . . . plaintiff's lost wages, medical expenses, and any other pecuniary losses incurred before death . . . ." *Cty. of L.A. v. Superior Court*, 21 Cal. 4th 292, 304 (1999).

Moreover, although § 377.34 permits "the estate representative [in a survival action] to seek punitive damages for the violation of decedent's rights," *Garcia*, 42 Cal. App. 4th at 185–86, "California courts have long interpreted [California Civil Code] Section 3294 [which governs the award of punitive damages] to require an award of compensatory damages, even if nominal, to recover punitive damages." *California v. Altus Fin. S.A.*, 540 F.3d 992, 1001 (9th Cir. 2008) (citing *Mother Cobb's Chicken Turnovers, Inc. v. Fox*, 10 Cal. 2d 203 (1937)). Thus, in a survival action, allegations of pain, suffering, or emotional distress do not provide a basis for awarding punitive damages. *See* First Order at 20–21 (holding that "because Plaintiffs cannot recover damages for Decedent's pain and suffering, Plaintiffs have failed to identify any compensable

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

United States District Court
Northern District of California

1    damages as required to plead a claim for relief under California law."); *Estate of Sandra Vela v.*

2    *Cty. of Monterey*, 2016 WL 4678300, at *6 (N.D. Cal. Sept. 7, 2016) (reaching same result).

3           Accordingly, to state claims for relief for negligent supervision, training, hiring, and

4    retention and negligence as survival causes of action, a decedent's successor in interest must

5    allege compensatory damages, even if nominal, that involve pre-death economic losses.  Cal. Civ.

6    Proc. Code § 377.34; *William S. Hart*, 53 Cal. 4th at 876 (requiring allegation of damages for

7    claim of negligent supervision); *Scott*, 231 Cal. App. 4th at 775 (requiring allegation of damages

8    for claim of negligence and negligent training).

9           Previously, the Court dismissed Plaintiffs' claims for negligent supervision, training,

10   hiring, and retention and for negligence in Plaintiffs' initial complaint because, even though

11   Plaintiffs alleged punitive damages, "Plaintiffs fail[ed] to identify any actual or compensatory

12   damages, even if nominal, that could serve as a predicate for the award of punitive damages."

13   First Order at 21, 27, 31.  In the FAC, Plaintiffs add a new paragraph alleging damages under the

14   negligent supervision, training, hiring, and retention claim:

15                  As a direct and proximate result of Defendants' failures, Mr. Pajas
                    endured pain, suffering, physical injury, and emotional distress prior
16                  to his death as alleged herein.  He also suffered a wholly preventable
                    death, and his wife and children incurred funeral and burial expenses
17                  presently calculated at $7,975.55.  His wife and children have also
                    suffered and will continue to suffer emotional distress, pain,
18                  suffering, costs of psychological treatment, past and future loss of
                    earnings and benefits, loss of familial relations, loss of society,
19                  financial support and care to the extent recoverable and in an
                    amount presently estimated to exceed $6,000,000.
20
     FAC ¶ 111.  On the negligence claim, Plaintiffs allege identical facts, FAC ¶ 132, and also bring
21
     an allegation of punitive damages, FAC ¶ 133.
22
            Plaintiffs concede that the alleged pre-death harm for "pain, suffering, . . . and emotional
23
     distress" is not compensable in a survival action.  Resp. at 4.  Similarly, Plaintiffs concede that the
24
     alleged harm suffered by decedent's family after his death are not compensable in a survival
25
     action.  *Id.* (citing *Quiroz*, 140 Cal. App. 4th at 1264 (requiring pre-death injury to the *decedent* in
26
     a survival action)).
27

28                                                   10

However, Plaintiffs argue that compensatory damages have been sufficiently pled because Plaintiffs allege that Decedent "endured . . . physical injury . . . prior to his death." FAC ¶ 111, 132. The Court disagrees. As an initial matter, the Court notes that the original complaint alleged that Decedent "suffered injuries and damages as alleged herein." ECF No. 1 ¶ 118. Plaintiffs have not altered the factual basis of their claims. *Compare* ECF No. 1 ¶¶ 53–68 (describing the events leading to Decedent's death), *with* FAC ¶¶ 52–67 (alleging identical facts). Therefore, Plaintiffs' new allegation of "physical injury" in the FAC does not cure the virtually identical previous allegation of "injuries and damages."

Moreover, Plaintiffs have not alleged any economic loss arising from the physical injury suffered by Decedent such as nominal damages, medical costs, property damage, or loss of wages. *See Chaudhry*, 751 F.3d at 1104 ("Section 377.34 limits damages in survival actions to the victim's pre-death economic losses."). In its response, Plaintiffs argue that the physical injury "would have resulted and/or did result in economic loss to Mr. Pajas," Resp. at 4, but the complaint does not contain a corresponding allegation of such an economic loss or of facts that would support finding such a loss. The only damages tied to the physical injury in the complaint are Decedent's "pain, suffering, . . . and emotional distress," which are not compensable under § 377.34.

Plaintiffs argue, however, that the complaint does allege that Decedent suffered "$6,000,000" of damages. Resp. at 5. However, the FAC does *not* allege that Decedent suffered $6,000,000 in damages. The FAC plainly states that "[Decedent's] wife and children have also suffered and will continue to suffer emotional distress, pain, suffering, costs of psychological treatment, past and future loss of earnings and benefits, loss of familial relations, loss of society, financial support and care to the extent recoverable and in an amount presently estimated to exceed $6,000,000." FAC ¶¶ 111, 132. The FAC contains no allegation that Decedent suffered an economic loss from his physical injuries.

Finally, Plaintiffs cite numerous cases where negligence claims have not been dismissed in survival actions. *See, e.g.*, *Bock v. Cty. of Sutter*, 2012 WL 3778953, at *16 (E.D. Cal. Aug. 31,

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California

1    2012).   However, these cases are inapposite because they do not discuss whether damages are

2    adequately alleged under the relevant cause of action and § 377.34.   In *Bock*, for example, the case

3    on which Plaintiffs primarily rely, the Eastern District of California court did not discuss whether

4    damages were adequately alleged under § 377.34 on a negligence and negligence per se claim at

5    all when denying a motion to dismiss.   *Id.*   Instead, the *Bock* court limited its discussion to those

6    issues actually raised by the parties: whether the defendants had violated California statutes by

7    transferring an inmate without a proper psychiatric evaluation.   *Id.*   Therefore, *Bock* does not

8    support Plaintiffs' position.

9         The other cases cited by Plaintiffs are similar.   *See Lum v. Cty. of San Joaquin*, 756 F.

10   Supp. 2d 1243 (E.D. Cal. 2010) (not addressing whether damages were adequately alleged in a

11   negligence action involving a failure to order a psychiatric evaluation); *Estate of Claypole v. Cty.*

12   *of Monterey*, 2016 U.S. Dist. LEXIS 21369, at \*40–42 (N.D. Cal. Feb. 22, 2016) (not addressing

13   whether there was sufficient evidence of damages to survive summary judgment in an action

14   concerning whether the defendants negligently placed a mentally ill patient in a cell with suicide

15   hazards); *Frary v. Cty. of Marin*, 81 F. Supp. 3d 811, 846 (N.D. Cal. 2015) (not addressing

16   whether there was sufficient evidence of damages to survive summary judgment in an action

17   concerning the negligence of jail staff).   Therefore, these cases do not stand for the proposition that

18   a simple allegation of "physical injury" without an accompanying economic loss states a claim for

19   negligent supervision, training, hiring, and retention and negligence.

20        Accordingly, because Plaintiffs have failed to allege a pre-death economic loss suffered by

21   Decedent as a result of Defendant CFMG's negligent supervision, training, hiring, and retention

22   and the CFMG Defendants' negligence, the motion to dismiss is GRANTED.   The Court denies

23   leave to amend because this Court previously dismissed Plaintiffs' original complaint due to

24   Plaintiffs' failure to allege a compensable injury for the claim of negligent supervision, training,

25   hiring, and retention and negligence as to the CFMG Defendants.   First Order at 27, 30–31.   As

26   Plaintiffs concede in their opposition to the instant motion, "This Court has already addressed and

27   ruled on the exact objections Defendants [CFMG] and Christina Kaupp, RN, raise to Plaintiffs'

28
                                                    12

United States District Court
Northern District of California

First Amended Complaint, in this second motion to dismiss." Resp. at 1. Despite litigating this deficiency in the previous motion to dismiss, Plaintiffs still have failed to cure the same deficiency. Therefore, the Court finds that further amendment would be futile and concludes that dismissal with prejudice is warranted. *See Lopez*, 203 F.3d at 1127–28 (allowing dismissal with prejudice where the Court finds that further amendment would be futile).

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS the CFMG Defendants' Motion to Dismiss with prejudice.

**IT IS SO ORDERED.**

Dated: November 4, 2016

_____
LUCY H. KOH
United States District Judge

Case No. 16-CV-00945-LHK
ORDER GRANTING MOTION TO DISMISS WITH PREJUDICE

United States District Court
Northern District of California