**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| MARK VASQUEZ PAJAS, et al., <br> Plaintiffs, <br> v. <br> COUNTY OF MONTEREY, et al., <br> Defendants. | Case No. 16-cv-00945-BLF <br><br> **ORDER RE MOTIONS IN LIMINE** <br><br> [Re: ECF 178, 179, 180, 181, 183, 184, 185, 186, 187, 190, 191, 192, 193, 194] |

The Court held the Final Pretrial Conference in this case on January 7, 2019. The Court heard oral argument on the parties' motions in limine and issued its rulings on the record. This order memorializes those rulings. For the reasons stated on the record, as summarized below, the Court orders as follows:

**PLAINTIFFS' MOTIONS IN LIMINE**

**(1) Plaintiffs' Motion in Limine No. 1 to Exclude and/or Limit All Testimony or Evidence Related to the January 19, 2015 Arrest of Mark Pajas, Sr.**

Plaintiffs seek to exclude any testimony or evidence regarding the January 19, 2015 arrest of and charges against the decedent, Mark Pajas, Sr. Mr. Pajas was arrested for an outstanding warrant on a prior traffic infraction, reckless driving, transporting a controlled substance for sale, and resisting arrest. Plaintiffs argue that information regarding those charges is irrelevant to this case under Federal Rule of Evidence 401 and that under Federal Rule of Evidence 403 any probative value would be outweighed by the danger of unfairly prejudicing or inflaming the jury. Finally, Plaintiffs argue that the charges and related records should be excluded under Federal Rule of Evidence 404 as impermissible character evidence.

In opposition, the County argues that the charges are relevant to decisions regarding Mr.

Pajas's housing and treatment. For example, the County argues that housing decisions are affected by pending charges because the potential length of incarceration must be considered, and that gang affiliation has an impact on where an individual can be housed.

The Court agrees with the County that the charges brought against Mr. Pajas are relevant to housing and treatment decisions, *see* Fed. R. Evid. 401, and that in general the probative value of that information is not substantially outweighed by its prejudicial effect, *see* Fed. R. Evid. 403. However, the Court finds that the prejudicial and inflammatory effect of informing the jury that Mr. Pajas was charged with a drug "sales" crime, as opposed to a "drug-related crime," would substantially outweigh any probative value. Moreover, the Court finds that information regarding any gang affiliation of Mr. Pajas is not relevant to housing and treatment decisions made in this case, and that the prejudicial and inflammatory effect of informing the jury of any gang affiliation would substantially outweigh any probative value.

Accordingly, the motion is GRANTED IN PART *only* as to reference to drug "sales" and as to reference to any gang affiliation; the motion otherwise is DENIED.

**(2)    Plaintiffs' Motion in Limine No. 2 to Exclude and/or Limit Evidence Regarding Any Arrest or Criminal History of Xavier Pajas**

Plaintiffs seek to exclude any evidence regarding the criminal history of the decedent's son, Plaintiff Xavier Pajas. The County does not oppose this motion. The CFMG Defendants do oppose, indicating that they wish to ask Plaintiff Xavier Pajas if he has been convicted of a felony. However, the CFMG Defendants did not seek information regarding Xavier Pajas' criminal history during discovery. The Court concludes that the type of fishing expedition suggested by the CFMG Defendants would be prejudicial to Plaintiffs and that such prejudice would outweigh any probative value regarding Xavier Pajas's criminal history. *See* Fed. R. Evid. 301, 403.

The motion is GRANTED.

**(3)    Plaintiffs' Motion in Limine No. 3 to Exclude and/or Limit Improper Defense Experts and/or Their Opinions**

Plaintiffs seek to exclude or limit the opinions of Defendants' experts Teri Ransbury, Dr. Harlan Watkins, Dr. Neal Benowitz, Kimberly Pearson, and Dr. Daniel Wasserman.

**(a)	Teri Ransbury**

Teri Ransbury is a compliance director employed by the County. She is charged with ensuring that training on first aid, including CPR, is up to date. Ms. Ransbury reviewed the documentation setting forth the CPR performed on Mr. Pajas and opined that the CPR was appropriate and up to date.

Plaintiffs seek to exclude Ms. Ransbury's opinion on the basis that she did not produce an expert report pursuant to Federal Rule of Civil Procedure 26. The County argues that because Ms. Ransbury offers opinions related to her regular work for the County, she is not required to provide an expert report, as a report must be provided only "if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The Court agrees with the County that because Ms. Ransbury is a County employee offering opinion as to her regular work, she is not required to provide an expert report.

The motion is DENIED as to Ms. Ransbury.

**(b)	Dr. Harlan Watkins**

Dr. Harlan Watkins is board certified in internal medicine with a specialization in cardiology, and he has training on detoxification from opioids. He also has testified at trial regarding life expectancy. He is offered by the CFMG Defendants to provide expert opinions regarding the cause of Mr. Pajas's death and Mr. Pajas's life expectancy. Plaintiffs move to exclude Dr. Watkins' opinions, challenging his qualifications under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), and arguing that his opinion that Mr. Pajas ingested methamphetamine on the day of his death was not disclosed in his report.

### 1.	*Daubert* Challenge

In *Daubert*, the Supreme Court held that Federal Rule of Evidence 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. As to relevance, the Court must determine "whether expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Id.* at 591 (internal quotation marks

and citation omitted). As to reliability, the Supreme Court has articulated four non-exclusive factors that may be considered by trial courts: (1) whether the theory or technique used by the expert "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) whether there is "general acceptance" of the theory or technique in the "relevant scientific community." *Id.* at 593-94. The reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999). When the expert is a physician, it may be more appropriate to focus on the physician's experience rather than the *Daubert* factors. *See Primiano v. Cook*, 598 F.3d 558, 566-67 (9th Cir. 2010).

Based on Dr. Watkins' training and experience, the Court concludes that he is qualified to give opinions regarding cause of death and life expectancy. Plaintiffs' challenges to Dr. Watkins' assessment of relevant risk factors and reliance on particular medical sources go to the weight of his opinions rather than their admissibility, and are the proper subject of cross-examination.

### 2. Late Opinion

At his deposition, Dr. Watkins opined for the first time that Mr. Pajas had used methamphetamine on the day of his death and that such use caused his death. Dr. Watkins' discussion of methamphetamine in his report was limited to the effects of methamphetamine generally, including the effects of long-term, chronic use. He did not opine in his report that Mr. Pajas used methamphetamine at the Jail or that Mr. Pajas's use on the day of his death actually caused his death. Accordingly, the latter opinions are subject to exclusion. *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (excluding expert's supplementary declaration which contained opinions that departed "substantially" from those offered in timely expert report).

As to Dr. Watkins, the motion is GRANTED with respect to his opinions that Mr. Pajas used methamphetamine on the day of his death and that such use caused his death. The motion otherwise is DENIED.

4

**(c) Dr. Neal Benowitz**

Dr. Benowitz is a Professor of Medicine in Bioengineering and Therapeutic Sciences, and he serves as the Chief of the Division of Clinical Pharmacology at the University of California at San Francisco. He focuses on cardiovascular medicine, medical toxicology, and clinical pharmacology. He has experience treating patients for substance abuse. Dr. Benowitz is offered by the CFMG Defendants to provide expert opinions regarding cause of death. Plaintiffs move to exclude his opinion that Mr. Pajas did not show signs of heroin withdrawal under the Clinical Opiate Withdrawal Scale ("COWS"), asserting that Dr. Benowitz did not reference COWS in his report but mentioned it for the first time during his deposition. The Court agrees with Plaintiff that Dr. Benowitz's deposition testimony regarding COWS is outside the scope of his expert report, and therefore that his opinion regarding COWS is subject to exclusion. *See Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1062 (C.D. Cal. 2010) (excluding expert's supplementary declaration which contained opinions that departed "substantially" from those offered in timely expert report). It does not appear that Plaintiffs are asserting a *Daubert* challenge to Dr. Benowitz and any such challenge would be denied.

The motion is GRANTED as to Dr. Benowitz's late-disclosed opinion regarding COWS.

**(d) Kimberly Pearson**

Kimberly Pearson is a registered nurse who has been working in the correctional health field for seven years. She is offered by the CFMG Defendants to provide expert opinions regarding the conduct of a reasonable nurse under the circumstances presented by this case. Plaintiffs seek to exclude Nurse Pearson's opinions regarding Defendant Kaupp's subjective awareness of Mr. Pajas's medical condition. The CFMG Defendants represent that Nurse Pearson will not be providing any opinions regarding Defendant Kaupp's subjective awareness.

The motion is GRANTED as to Nurse Pearson's opinions regarding Defendant Kaupp's subjective awareness.

**(e) Dr. Daniel Wasserman**

Dr. Wasserman is a former County employee who examined and treated Mr. Pajas at Natividad Medical Center following Mr. Pajas's arrest and prior to Mr. Pajas's admission to the

5

1 Jail. Plaintiffs do not dispute that Dr. Wasserman may testify to opinions he reached while treating Mr. Pajas. However, the County has indicated that it will offer Dr. Wasserman's deposition testimony that "Injection drug use can cause cellulitis." Plaintiffs argue that nothing in the record indicates that Dr. Wasserman formed that opinion while treating Mr. Pajas and that, in fact, Dr. Wasserman testified that Mr. Pajas's Natividad medical chart does not indicate any connection between Mr. Pajas's injection drug use and cellulitis. *See* Rifkin Decl. Exh. K (Wasserman Dep) at 30:4-13, ECF 188.

The County's opposition brief addresses only Ms. Ransbury – it contains no argument in opposition to Plaintiffs' motion regarding Dr. Wasserman. *See* County's Opp., ECF 203. "[A] treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 826 (9th Cir. 2011). It appears that Dr. Wasserman's testimony regarding injection drug use causing cellulitis is beyond the scope of his opinions formed during treatment. Consequently, that testimony may not be presented at trial.

The motion is GRANTED as to Dr. Wasserman's opinions which go beyond the scope of opinions that he formed while treating Mr. Pajas.

**(4) Plaintiffs' Motion in Limine No. 4 to Exclude Any Evidence or Argument for the Purpose of Establishing that Defendants' Withdrawal/Detoxification Policies, Procedures, and Practices Governing the Treatment of Mark Pajas, Sr. were Constitutionally Adequate, Appropriate, or Met the Standard of Care**

Plaintiffs contend that a prior ruling in *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929, 949-51 (N.D. Cal. 2015), conclusively establishes that Defendants' withdrawal and detoxification policies, procedures, and practices were not constitutionally adequate and did not meet the standard of care at the time of Mr. Pajas's death. Plaintiffs seek to exclude any evidence or argument to the contrary under the doctrine of issue preclusion. In opposition, Defendants argue that the cited *Hernandez* decision was a preliminary injunction order which neither decided the adequacy of Defendants' withdrawal and detoxification procedures nor constituted a final judgment as required for issue preclusion. *See Hydranautics v. FilmTech Corp.*, 204 F.3d 880,

1  885 (9th Cir. 2000) (discussing requirements for issue preclusion).

2  Although the cited *Hernandez* decision does contain some language suggesting that the district court made factual findings regarding the adequacy of Defendants' policies and procedures, the decision was an order granting a preliminary injunction based on the district court's determination that the plaintiffs had shown that they were "likely to succeed on the merits." *Hernandez,* 110 F. Supp. 3d at 934. The district court's conclusion regarding *likelihood* of success on the merits did not *necessarily decide* the adequacy of Defendants' policies and procedures.

Accordingly, the motion is DENIED. The *Hernandez* preliminary injunction order did not conclusively establish any facts regarding the adequacy of Defendants' policies and procedures.

**(5) Plaintiffs' Motion in Limine No. 5 to Preclude Defendant Kaupp from Testifying that She Checked on or Observed Mr. Pajas in the Sobering Cell on January 20, 2015 Numerous Unspecified Times**

Plaintiffs seek to preclude Defendant Kaupp from testifying that she checked on or observed Mr. Pajas in the sobering cell on January 20, 2015 on occasions other than the two instances she recorded in the medical records, which are observable via Jail surveillance video. Defendant Kaupp claims that surveillance video shows that she checked on Mr. Pajas more than twice, and that the video did not capture other occasions on which she checked Mr. Pajas.

With respect to Defendant Kaupp's claim that the surveillance video shows her checking on Mr. Pajas more than twice, Defendant Kaupp's counsel agreed to provide Plaintiffs with pin citations to the relevant video timestamps on or before January 14, 2019. With respect to Defendant Kaupp's claim that the surveillance video simply did not capture other occasions on which she checked Mr. Pajas, the motion is DENIED. Defendant Kaupp contends that the video surveillance cameras did not capture all areas in which she could have observed Mr. Pajas, and the Court is not in a position to determine the truth of that contention.

//
//
//

7

**CFMG DEFENDANTS' MOTIONS IN LIMINE**

**(1)** **CFMG Defendants' Motion in Limine No. 1 to Exclude Evidence of Alleged Failure to Promulgate Appropriate Policies and Procedures for Inmates Undergoing Opiate Detoxification**

The CFMG Defendants seek to exclude the opinion of Plaintiffs' expert, Dr. Marc F. Stern, that the Jail's opiate withdrawal protocol was deficient. The basis for the motion is Dr. Stern's alleged failure to establish that the protocol was the cause of Mr. Pajas's death. According to the CFMG Defendants, "[e]vidence of alleged deficiencies in the opiate detox protocol without evidence of causation, would certainly create a substantial danger of undue prejudice." CFMG Defs.'s MIL 1 at 2-3, ECF 190. In opposition, Plaintiffs point out that the CFMG Defendants are conflating two separate elements of Plaintiffs' constitutional claims: (a) whether the opiate detoxification policy was inadequate and (b) whether there is a direct causal link between the detoxification policy and Mr. Pajas's death. *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075-76 (9th Cir. 2016).

The motion is DENIED. Dr. Stern's asserted failure to opine as to one element of Plaintiffs' claims, causation, does not preclude him from opining as to another element of Plaintiffs' claims, inadequacy of the detoxification policy. Other evidence may prove causation and the jury will evaluate all evidence to determine this required element. Otherwise, the CFMG Defendants' motion would amount to an untimely motion for summary judgment.

**(2)** **CFMG Defendants' Motion in Limine No. 2 to Preclude Admission of the Report of Michael Puisis, D.O. and to Preclude the Opinion in *Hernandez v. County of Monterey***

The CFMG Defendants seek to exclude the *Hernandez* preliminary injunction order discussed above, as well as the report of Michael Puisis, D.O., a neutral expert retained by the *Hernandez* parties.

As discussed above, the *Hernandez* order did not conclusively establish any facts regarding the adequacy of Defendants' policies and procedures. The Court therefore concludes that it is inadmissible to prove liability in this case. At the hearing, Plaintiffs requested leave to file a supplemental brief addressing the admissibility of the *Hernandez* decision to show Defendants'

willfulness for purposes of establishing Plaintiffs' entitlement to punitive damages. The Court granted Plaintiffs leave to file a two-page supplemental brief on or before January 11, 2019. Plaintiffs timely filed a supplemental brief stating that "[g]iven this Court's ruling during the pretrial conference in the instant case that the *Hernandez* Court did not make any findings of fact in its preliminary injunction order, Plaintiffs do not offer any additional argument as to the admissibility of the *Hernandez* order as evidence in this case." Pls.' Suppl. Br. at 2, ECF 241.

The motion is GRANTED as to the *Hernandez* preliminary injunction order.

With respect to the Puisis report, the CFMG Defendants argue that Dr. Puisis' findings and recommendations regarding jail policies are irrelevant "because none of the deficiencies noted by Dr. Puisis with respect to detoxification and withdrawal policies played any role in the death of Mr. Pajas." CFMG Defs.' MIL 2 at 3, ECF 191. "Specifically," the CFMG Defendants argue, "plaintiffs' expert witness, Mark Stern, M.D.'s opinions regarding the adequacy of the defendants' policies and procedures with regard to detoxification procedures failed to include an opinion that any of the deficiencies noted by Dr. Puisis was a proximate cause of Mr. Pajas's death." *Id.* As discussed above, whether Defendants policies and procedures were inadequate and whether those policies and procedures caused Mr. Pajas's death are two separate issues. Plaintiffs' entitlement to present evidence on one issue, the adequacy of Defendants' policies and procedures, does not depend on the robustness of Plaintiffs' evidence regarding a separate issue, causation. Moreover, the Puisis report is relevant to the issue of Defendants' notice regarding the alleged inadequacies of their policies. The Puisis report constitutes a party admission, as Dr. Puisis was retained jointly by Defendants and the *Hernandez* plaintiffs. *See* Fed. R. Evid. 801(d)(2)(C), (D).

The motion is DENIED as to the Puisis report.

**(3) CFMG Defendants' Motion in Limine No. 3 to Exclude Opinion Testimony from Plaintiffs' Expert that Any of the Actions of the Defendants or Defendant's Employees was "Reckless" or in "Conscious Disregard" or "Deliberately Indifferent"**

The CFMG Defendants move to preclude any of Plaintiffs' experts from opining on ultimate legal conclusions that Defendants' conduct was "reckless," or in "conscious disregard," or "deliberately indifferent." Plaintiffs do not oppose this motion, and they represent that they will

9

1 not present any such expert opinion.

The motion is GRANTED.

**(4)  CFMG Defendants' Motion in Limine No. 4 to Preclude Evidence of Credibility**

The CFMG Defendants seek to preclude Plaintiffs' experts from testifying as to whether particular witnesses are credible. Plaintiffs agree that an expert may not testify that a witness lied. However, Plaintiffs cite cases holding that an expert may testify regarding facts which might affect the believability of a witness's story. *See, e.g., Goodman v. Harris Cnty.*, 571 F.3d 388, 399-400 (5th Cir. 2009). The motion is not directed to any specific expert evidence, and it is impossible for the Court to determine in a vacuum whether future evidence offered by Plaintiffs' experts will be inadmissible as pure credibility opinion or admissible as opinion regarding facts which make another witness's testimony more or less believable.

The blanket motion is DENIED, without prejudice to trial objections to particular expert testimony or opinions.

**(5)  CFMG Defendants' Motion in Limine No. 5 to Bifurcate Punitive Damages**

The CFMG Defendants move to bifurcate the issue of punitive damages, arguing that evidence of their income, assets, and net worth could influence the jury's determination of liability and compensatory damages. Plaintiffs do not oppose the motion.

The motion is GRANTED as to the issue of the *amount* of punitive damages only. Liability for punitive damages will be tried in the first phase.

**COUNTY'S MOTIONS IN LIMINE**

**(1)  County's Motion in Limine No. 1 to Exclude Testimony of Improperly Disclosed Witnesses**

The County moves to exclude the testimony of a number of individuals which the County asserts were not properly disclosed as witnesses. Those individuals include a Jail inmate, Mr. Libby, who provided a written statement, and twelve individuals who allegedly have information regarding Mr. Pajas's relationships with his family members. Although Plaintiffs filed a written opposition to the motion, at the hearing Plaintiffs' counsel indicated that the motion is unopposed and that Plaintiffs will not offer Mr. Libby or the other twelve individuals at trial.

1      The motion is GRANTED.

**(2)   County's Motion in Limine No. 2 to Exclude Testimony and Expert Report of Dr. Larissa Mooney**

The County moves to exclude the testimony and report of Plaintiffs' addiction medicine expert, Dr. Larissa Mooney. In her expert report, Dr. Mooney offered several opinions explaining heroin addiction and its effects, heroin withdrawal, relapse rates, and the abilities of addicts to function and maintain relationships. She also opined in her rebuttal report that Dr. Watkins, the CFMG Defendants' expert, made erroneous calculations regarding Mr. Pajas's life expectancy. The County does not challenge Dr. Mooney's qualifications or experience, and it does not challenge the bulk of her opinions. Instead, the County seeks to exclude the entirety of her testimony and report based on the County's contention that Dr. Mooney's opinions regarding the abilities of heroin addicts to maintain relationships is irrelevant and prejudicial because Dr. Mooney did not speak to members of Mr. Pajas's family.

Even if the Court were to determine that Dr. Mooney is unqualified to give an opinion regarding addicts' familial relationships, that determination would not warrant exclusion of Dr. Mooney's opinions on other subjects. Moreover, the Court concludes that Dr. Mooney is qualified to opine regarding the abilities of addicts to maintain relationships, and that her opinion "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (internal quotation marks and citation omitted). Claim 4 is for violation of substantive due process, specifically, deprivation of familial relationships. Jurors are unlikely to have experience or knowledge with the types of family relationships a drug addict may have.

The motion is DENIED.

**(3)   County's Motion in Limine No. 3 to Exclude Testimony of Improperly Disclosed Expert Witness John Powell and Reliance on Evidence Altered by Mr. Powell**

The County moves to exclude the testimony of John Powell, who was disclosed by Plaintiffs as a rebuttal witness, as well as surveillance video recordings modified or altered by Mr. Powell. Mr. Powell is an expert in audio forensics, digital evidence, and investigative technology. He enhanced the Jail's video surveillance recordings, and Plaintiffs wish to play portions of that

enhanced video to the jury. The County argues that Mr. Powell's testimony and modified videos are not properly presented in rebuttal.

The Court finds that Mr. Powell is not properly a rebuttal expert. "Fed. R. Civ. P. 26(a)(2)(C)(ii) permits the admission of rebuttal expert testimony that is intended solely to contradict or rebut evidence on the same subject matter identified by an initial expert witness." *R & O Const. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-CV-01749-LRH-LR, 2011 WL 2923703, at *2 (D. Nev. July 18, 2011) (internal quotation marks and citation omitted). "Rebuttal expert reports necessitate a showing of facts supporting the opposite conclusion of those at which the opposing party's experts arrived in their responsive reports." *Id.* (internal quotation marks and citation omitted). "Rebuttal expert reports are proper if they contradict or rebut the subject matter of the affirmative expert report." *Id.* Neither Mr. Powell nor Plaintiffs identify which of Defendants' expert reports Mr. Powell's testimony is intended to rebut. Consequently, although the Court is satisfied that Mr. Powell is qualified in audio forensics and digital evidence, his testimony and videos are inadmissible as rebuttal.

The motion is GRANTED.

**(4) County's Motion in Limine No. 4 to Exclude from Evidence Plaintiffs' Proposed Exhibit 234**

The County seeks to exclude from evidence Plaintiffs' proposed Exhibit 234, which is an audit of Jail operations conducted by the Monterey County Sheriff's Office ("MCSO") Corrections Programs Manager and Corrections Ombudsman at the direction of the MCSO Chief Deputy. The County asserts that the document was inadvertently produced and that it is protected by attorney-client privilege and attorney work product privilege. In opposition, Plaintiffs argue that the County has waived any applicable privileges. The County did not advise Plaintiffs of its view regarding privilege until November 2018.

The Court finds that the County has waived any applicable privileges. Plaintiffs submitted Exhibit 234 along with an administrative motion in this case in June 2018, requesting sealing of Exhibit 234 and those portions of Plaintiffs' motion for partial summary judgment which referred to Exhibit 234. *See* Pls.' Admin. Motion, ECF 153. Plaintiffs indicated that the County had not

designated Exhibit 234 as confidential pursuant to the protective order entered in this case, but the County had produced Exhibit 234 to Plaintiffs with a prior stamp of "Confidential" on it. *See id.* However, the County did not attempt to claw back the document at that time, and it did not even file a declaration supporting its sealing. As a result, the Court denied Plaintiffs' administrative motion and directed that the document be filed publicly. *See* Order Denying Admin. Motion, ECF 160. The document was filed publicly in July 2018. *See* ECF 161. Under these circumstances, the Court cannot find that the County "promptly took reasonable steps to rectify the error" of the claimed inadvertent disclosure. *See* Fed. R. Evid. 502(b).

The motion is DENIED.

**IT IS SO ORDERED.**

Dated: January 14, 2019

_____
BETH LABSON FREEMAN
United States District Judge