Dan Stormer, Esq. [S.B. #101967]
Cindy Pánuco, Esq. [S.B. #266921]
HADSELL STORMER & RENICK LLP
128 N. Fair Oaks Avenue
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079
Emails: dstormer@hadsellstormer.com
      cpanuco@hadsellstormer.com

Lori Rifkin, Esq. [S.B. # 244081]
HADSELL STORMER & RENICK LLP
4300 Horton Street, #15
Emeryville, CA 94608
Telephone: (415) 685-3591
Facsimile: (626) 577-7079
Email: jps@hadsellstormer.com
      lrifkin@hadsellstormer.com

Attorneys for Plaintiffs

[Additional Counsel cont. on next page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF MARK VASQUEZ PAJAS, SR., deceased, by and through ROSEMARY LOPEZ, as Administrator; ROSEMARY LOPEZ; YVETTE PAJAS; MARK PAJAS, JR.; JANEL PAJAS; XAVIER PAJAS, <br><br> Plaintiffs, <br><br> vs. <br><br> COUNTY OF MONTEREY; CALIFORNIA FORENSIC MEDICAL GROUP; CHRISTINA KAUPP; and DOES 1-20, <br><br> Defendants. | Case No.: 16-CV-00945-BLF <br> [Related to Case No.: CV-14-05481-BLF] <br><br> [Assigned to the Honorable Beth Labson Freeman - Courtroom 3] <br><br> **JOINT PRETRIAL STATEMENT AND [PROPOSED] ORDER** <br><br> DATE:     December 6, 2018 <br> TIME:      1:30 p.m. <br> CRTRM:    3 <br><br> Complaint filed:        February 25, 2016 <br> Discovery Cut-Off:     July 28, 2017 <br> Motion Cut-Off:       June 28, 2018 <br> Trial Date:            January 28, 2019 |

1  [Additional Counsel cont. from first page]

2  CHARLES J. McKee, SBN 152458
   County Counsel
3  MICHAEL R. PHILIPPI, SBN 120967
   Deputy County Counsel
4  County of Monterey
   168 West Alisal Street, Third Floor
5  Salinas, California 93901-2653
   Telephone: (831) 755-5045
6  Facsimile: (831) 755-5283

7  Attorneys for Defendant COUNTY OF MONTEREY

8
   Alan L. Martini, SB No. 77316
9  SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN
   A Professional Corporation
10 1033 Willow Street
   San Jose, California 95125
11 Telephone (408) 288-9700
   Facsimile (408) 295-9900
12 Emails: amartini@smtlaw.com

13 Attorneys for Defendants
   CALIFORNIA FORENSIC MEDICAL
14 GROUP, INC. and CHRISTINA KAUPP

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT PRETRIAL STATEMENT AND ORDER

Plaintiffs Estate of Mark Vasquez Pajas, Sr., deceased, by and through Rosemary Lopez, as administrator, Rosemary Lopez, Yvette Pajas, Mark Pajas, Jr., Janel Pajas, and Xavier Pajas and remaining Defendants County of Monterey, California Forensic Medical Group, and Christina Kaupp, by and through their respective attorneys of record (hereafter collectively referred to as "the Parties"), hereby submit their Joint Pretrial Statement and [Proposed] Order pursuant to Judge Labson Freeman's Standing Order Re Final Pretrial Conference – Jury Trial, revised April 10, 2014.

## 1. The Action.

### a. The Parties.

All parties have been served. The remaining parties in this action are:

- Plaintiffs Estate of Mark Vasquez Pajas, Sr., deceased, by and through Rosemary Lopez, as administrator, Rosemary Lopez, Yvette Pajas, Mark Pajas, Jr., Janel Pajas, and Xavier Pajas

- Defendants County of Monterey, California Forensic Medical Group, and Christina Kaupp.

The following Defendants were dismissed pursuant to joint stipulation:

- Defendants King City and Officer Steve Orozco.

The following Defendants were granted summary judgment:

- Sheriff Steve Bernal. (Dkt. No. 176.)

### b. Substance of the Action.

Plaintiffs' First Amended Complaint was filed on August 5, 2016 (Dkt. No. 63). The court entered summary judgment in favor of Sheriff Bernal in his individual capacity on November 5, 2018. (Dkt. No. 176). Plaintiffs' remaining claims to be decided by the jury are:

1. **Plaintiffs' Fourteenth Amendment claim for Failure to Protect from Harm against the County, CFMG, and Kaupp**.

To establish deliberate indifference for failure to protect from substantial risk of serious harm, pretrial detainees like Mark Pajas must prove the following elements by a preponderance of the evidence: (1) Mr. Pajas faced a substantial risk of serious harm; (2) Defendant was deliberately indifferent to that risk, that is, the defendant knew of it and disregarded it by failing to take reasonable measures to address

JOINT PRETRIAL STATEMENT AND ORDER     Case No.: 16-CV-00945-BLF

it; and (3) The acts and/or failures to act of the defendant caused harm to Mr. Pajas.

**Authority:** Ninth Circuit Manual of Model Jury Instruction No. 9.25; *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1070-73 (9th Cir. 2016); *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1077-78 (9th Cir. 2013) (holding that appropriate deliberate indifference inquiry for protection from harm analysis evaluates whether policymakers knew that policies would pose a risk to someone in inmate's situation, not simply whether they were subjectively aware of the decedent's specific needs); *Hydrick v. Hunter*, 500 F.3d 978, 994 (9th Cir. 2007) (rights of detainees under Fourteenth Amendment are at least coextensive with those applicable to prisoners under the Eighth Amendment); *Estate of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194, 1206 (E.D. Cal. 2005) (substantial risk of harm from heroin detoxification established when county knew some inmates are heroin users or addicts, knew that withdrawal is a health problem requiring medical attention, and did not adopt sufficient detoxification procedures).

**County Defendants' Statement:** Plaintiffs' misstate the law with regard to the cases cited. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1077-78 (9th Cir. 2013) applies to claims against individual Defendants sued in their individual capacity. Defendant Bernal is sued in his official capacity, not his individual capacity. *Estate of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194, 1206 (E.D. Cal. 2005) does not apply to this case, since the Court's ruling was based on the fact that heroin addicts were housed in general population and not detoxification cells. Here it is undisputed that Mr. Pajas was held in a detoxification cell.

**Defendants CFMG and Kaupp's Statement:** The elements for a pretrial detainee's Fourteenth Amendment claim against an individual for deprivation of adequate medical care or failure to protect from harm are: "(I) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (v) by not taking such measures, the defendant caused that plaintiff's injuries." *Gordon v. Cty of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (medical care claim); see also *Castro*, 833 F.3d at 1071 (failure to protect claim). "With respect to the

third element, the defendant's conduct must be objectively unreasonable." *Gordon*, 888 F.3d at 1125 (quotation marks and citation omitted).

The elements of a pretrial detainee's Fourteenth Amendment claim against an entity defendant for deprivation of adequate medical care or failure to protect from harm are those set forth in *Monell* and its progeny. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (citing *Montell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). A detainee must show (1) "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and (2) "demonstrate that the custom or policy was adhered to with deliberate indifference to the constitutional rights of the jail's inhabitants." *Castro*, F.3d at 1076-76. The deliberate indifference standard for municipalities is an objective standard. *Castro,* 833 F.3d at 1076. "[A]n objective standard applies to municipalities 'for the practical reason that government entities, unlike individuals, do not themselves have states of mind.'" *Mendiola-Martinez*, 836 F.3d at 1248 (quoting *Castro*, 833 F.3d at 1076). "This *Castro* objective standard is satisfied when 'a § 1983 plaintiff can establish that the facts available to city policymakers puts them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens.'" *Id.* at 1248-49 (quoting *Castro*, 833 F.3d at 1076 (alteration in original).

> 2. **Plaintiffs' Fourteenth Amendment claims against the County, CFMG, and Kaupp for Failure to Provide Adequate Medical Care**.

To establish deliberate indifference for failure to provide adequate medical care, under the Fourteenth Amendment to the United States Constitution, pretrial detainees like Mark Pajas must prove the following elements by a preponderance of the evidence: (1) Mr. Pajas had a serious medical need; (2) Defendant was deliberately indifferent to that serious medical need, that is, the defendant knew of it and disregarded it by failing to take reasonable measures to address it; and (3) The acts and/or failures to act by the defendant caused harm to Mr. Pajas.

**Authority**: Ninth Circuit Model Jury Instruction No. 9.25; *Brown v. Plata*, 563 U.S. 493, 501-02 (2011) (inmates have a right to adequate treatment for serious medical and mental health needs under the Fourteenth and Eighth Amendments); *Gordon v. Cnty. of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. 2018); *Simmons v. Navajo County*, 609 F.3d 1011, 1017 (9th Cir. 2010) (courts evaluating claims of

pretrial detainees under Fourteenth Amendment use same analytical framework for those sentenced under Eight Amendment); *Hydrick v. Hunter*, 500 F.3d 978, 994 (9th Cir. 2007) (rights of detainees under Fourteenth Amendment are at least coextensive with those applicable to prisoners under the Eighth Amendment); *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 2001) *Hernandez*, 110 F. Supp. 3d at 948.

**Defendants CFMG and Kaupp's Statement:** The elements for a pretrial detainee's Fourteenth Amendment claim against an individual for deprivation of adequate medical care or failure to protect from harm are: "(I) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (v) by not taking such measures, the defendant caused that plaintiff's injuries." *Gordon v. Cty of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (medical care claim); see also *Castro*, 833 F.3d at 1071 (failure to protect claim). "With respect to the third element, the defendant's conduct must be objectively unreasonable." *Gordon*, 888 F.3d at 1125 (quotation marks and citation omitted).

The elements of a pretrial detainee's Fourteenth Amendment claim against an entity defendant for deprivation of adequate medical care or failure to protect from harm are those set forth in *Monell* and its progeny. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (citing *Montell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). A detainee must show (1) "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and (2) "demonstrate that the custom or policy was adhered to with deliberate indifference to the constitutional rights of the jail's inhabitants." *Castro*, F.3d at 1076-76. The deliberate indifference standard for municipalities is an objective standard. *Castro*, 833 F.3d at 1076. "[A]n objective standard applies to municipalities 'for the practical reason that government entities, unlike individuals, do not themselves have states of mind.'" *Mendiola-Martinez*, 836 F.3d at 1248 (quoting *Castro*, 833 F.3d at 1076). "This *Castro* objective standard is satisfied when 'a § 1983 plaintiff can establish that the facts available to city policymakers puts them on actual or constructive notice that the particular omission [or act] is substantially certain to

result in the violation of the constitutional rights of their citizens.'" *Id.* at 1248-49 (quoting *Castro*, 833 F.3d at 1076 (alteration in original).

        3.      **Plaintiffs' Fourteenth Amendment Substantive Due Process Claims Against the County, CFMG, and Kaupp**.

In order to prove that defendant deprived plaintiffs of their rights to the companionship of, and a relationship with, their husband/father, plaintiffs must prove the following elements by a preponderance of the evidence: (1) Defendant was deliberately indifferent to Mark Pajas's serious medical needs and/or the substantial risk that he would suffer serious harm, including but not limited to death; (2) The acts and/or failures to act of the defendant prevented Plaintiffs from the companionship of and having a relationship with their husband/father.

**Authority:** *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1079 (9th Cir. 2011) ("The substantive due process right to family integrity or to familial association is well established."); *United States v. Wolf Child*, 699 F.3d 1082, 1091 (9th Cir. 2012) ("A parent has a fundamental liberty interest in companionship with his or her child." (citation and quotation omitted)); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct and where circumstances are such that actual deliberation is practical, an officer's deliberate indifference meets the "shock the conscience" standard of the Fourteenth Amendment); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986) (permitting parents to assert a familial association claim where their decedent, a pre-trial detainee, committed suicide while in prison).

        4.      **Plaintiffs' Wrongful Death Claim Against CFMG**

In order to establish their wrongful death claim against CFMG, Plaintiffs must prove by a preponderance of the evidence that CFMG's unconstitutional failures to protect Mr. Pajas from harm and to provide him adequate medical care constituted (1) a wrongful act or neglect that (2) caused (3) the death of Mark Pajas, the existence of which establishes liability for wrongful death.

**Authority:** *See* Cal. Civ. P. Code § 377.60; *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999); *Lattimore v. Dickey* 239 Cal.App.4th 959, 968 (2015).

**County Defendants' Statement:** Plaintiffs' misstate the law with regard to the cases cited. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1077-78 (9th Cir. 2013) applies to claims against individual Defendants sued in their individual capacity. Defendant Bernal is sued in his official capacity, not his individual capacity. *Estate of Abdollahi v. Cnty. of Sacramento*, 405 F. Supp. 2d 1194, 1206 (E.D. Cal. 2005) does not apply to this case, since the Court's ruling was based on the fact that heroin addicts were housed in general population and not detoxification cells. Here it is undisputed that Mr. Pajas was held in a detoxification cell.

As to the County of Monterey, to establish a Monell claim, Plaintiffs must prove (1) a direct causal link between a County custom or policy and the deprivation of Mr. Pajas' constitutional rights to adequate medical care and/or protection from harm, and (2) the custom or policy was adhered to with deliberate indifference to the constitutional rights of jail inhabitants. *Castro v. Cty. Of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). Under California law, 15 CCR § 1056, welfare checks for inmates housed in a sobering cell "shall be conducted no less than every half hour."

At least two routes can lead to the conclusion that a municipality has inflicted a constitutional injury. First, a plaintiff can show that a municipality itself violated someone's rights or that it directed its employee to do so. *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404, (1994). Alternatively, in limited situations, a plaintiff can demonstrate that a municipality is responsible for a constitutional tort committed by its employee, even though it did not direct the employee to commit the tort. 520 U.S. at 406-7.

Under the second route to municipality liability, plaintiff need not allege that the municipality itself violated someone's constitutional rights or directed one of its employees to do so. Instead, a plaintiff can allege that through its omissions the municipality is responsible for a constitutional violation committed by one of its employees, even though the municipality's policies were facially constitutional. However, because *Monell* held that a municipality may not be held liable under a theory of respondeat superior, a plaintiff must show that the municipality's deliberate indifference led to its omission and that the omission caused the employee to commit the constitutional violation. To prove deliberate indifference, the plaintiff must show that the municipality was on actual or constructive notice that its omission would likely result in a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825, 841, 128 L.

Ed. 2d 811, 114 S. Ct. 1970 (1994). Compared to the more direct route to municipal liability discussed above, "much more difficult problems of proof" are presented in a case where a city employee acting under a constitutionally valid policy violated someone's rights. *Board of County Comm'rs*, 520 U.S. at 406.

The County contends that Plaintiffs cannot establish a direct causal link between any policy of the County and/or act or omission of a County employee and Mr. Pajas' death. The County contends Plaintiffs cannot establish any policy or custom of the County was constitutionally deficient. The County contends Plaintiffs cannot establish that the County adhered to a policy or custom with deliberate indifference to any of Mr. Pajas' constitutional rights.

**c.    Relief Sought.**

Plaintiffs seek compensatory and punitive damages, funeral and burial costs, and costs of suit, including reasonable attorneys' fees, and any other relief the court deems just and proper.

**d.    Federal Jurisdiction and Venue.**

This Court has jurisdiction over the federal claims brought in this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

**2.    Factual Basis of the Action.**

**a.    Undisputed Facts.**

1.    Rosemary Pajas is the wife of Mark Pajas Sr.

2.    Yvette Pajas is the daughter of Mark Pajas Sr.

3.    Mark Pajas Jr. is the son of Mark Pajas Sr.

4.    Janel Pajas is the daughter of Mark Pajas Sr.

5.    Xavier Pajas is the son of Mark Pajas Sr.

6.    Mark Pajas Sr. was 56 years old on January 19, 2015.

7.    The County of Monterey operates the Monterey County Jail ("County Jail") through the Monterey County Sheriff's Office.

8.    CFMG is the private corporation contracted by Monterey County to provide

health care at the County Jail.

9.     Christina Kaupp is, and was at all relevant times, a registered nurse employed by CFMG to provide medical care to inmates in the County Jail.

10.     In the afternoon of January 19, 2015, Mr. Pajas was arrested in King City.

11.     Nearly four hours later, King City Police Officer Orozco took Mr. Pajas to Natividad Medical Center where he was evaluated by Emergency Department physician, Dr. Daniel Wasserman.

12.     Mr. Pajas informed Dr. Wasserman and the triage nurse that he was a regular heroin user, had successfully detoxed on numerous previous occasions, and that he would "need help" for the withdrawal symptoms he expected during his incarceration.

13.     Dr. Wasserman diagnosed Mr. Pajas with cellulitis, leg swelling, and shortness of breath.

14.     Dr. Wasserman's discharge instructions were that "if [Pajas] develop[s] chest pain or shortness of breath return to the ER immediate." With these instructions, Dr. Wasserman medically cleared Mr. Pajas for jail at 6:30 p.m.

15.     Mr. Pajas was then taken to Monterey County Jail where he reported that he used 3/4 grams of heroin daily and that he used heroin earlier that day.

16.     During the "intake triage assessment" by a registered nurse employed by CFMG, at 7:00 p.m., Pajas told her that he used "a lot" of heroin "earlier today" and stated, "he is 'coming down' and needs meds to help him."

17.     At 4:05 a.m., on January 20, 2015, Deputy Quintero started a sobering cell log for Mr. Pajas.

18.     Mr. Pajas was pronounced dead on January 20, 2015 at 2:53 p.m.

**b.**     <u>**Disputed Facts.**</u>

1.     Whether Mr. Pajas had a serious medical need while in custody of the Monterey County Jail;

2.     Whether deputies made medical decisions about whether to place inmates in

sobering cells;

3. Whether Mr. Pajas was undergoing opiate withdrawal at any time during his incarceration;

4. Whether the cause of Mr. Pajas's death was recent ingestion of methamphetamine which triggered an arrythmia superimposed on preexisting significant coronary artery disease and enlarged heart;

5. Whether the cause of Mr. Pajas's death was opiate detoxification;

6. Whether any of the medications or assessments that Mr. Pajas refused would have prevented his death;

7. Whether here deputies made medical decisions about whether to place Mr. Pajas in a sobering cell;

8. Whether deputies conducted sobering cell welfare checks every fifteen minutes in accordance with County policy;

9. Whether the County failed to ensure that deputies conducted welfare checks every 15 minutes on inmates in detox in accordance with the County's own policy;

10. Whether deputies failed to conduct welfare checks on Mr. Pajas every fifteen minutes in accordance with County policy;

11. Whether medical professionals were notified by deputies once an inmate was placed in a sobering cell;

12. Whether any medical professionals were notified when Mr. Pajas was left in the sobering cell;

13. Whether any medical professionals were notified when Deputy Quintero started a sobering cell log for Mr. Pajas;

14. Whether the County failed to ensure that CFMG provided adequate detoxification treatment to inmates;

15. Whether medical professionals failed to evaluate and make decisions about whether to place inmates in sobering cells;

16. Whether a medical professional failed to evaluate and make a decision about

whether to place Mr. Pajas in a sobering cell;

17. Whether CFMG failed to ensure that nurses consulted with doctors when running detoxification protocols;

18. Whether CFMG failed to implement policies to ensure adequate detoxification treatment to inmates;

19. Whether CFMG's opiate detoxification protocol was adequately tailored to address opiate withdrawal;

20. Whether Mr. Pajas was placed on a detoxification protocol that was appropriate for opiate withdrawal;

21. Whether a nurse consulted with a doctor when ordering that Mr. Pajas be placed on a detoxification protocol;

22. Whether a nurse ever consulted with a doctor while Mr. Pajas was on a detoxification protocol;

23. Whether Mr. Pajas refused any medication, or was in medical distress that prevented  him from being able to keep down medication;

24. Whether Mr. Pajas refused any medical treatment, or was in medical distress that prevented him from being able to accept medical treatment;

25. Whether any CFMG treater provided appropriate treatment to Mr. Pajas;

26. Whether Nurse Kaupp appropriately evaluated Mr. Pajas;

27. Whether Nurse Kaupp provided appropriate medical treatment to Mr. Pajas;

28. Whether Nurse Kaupp required Mr. Pajas to stand up or get up in order to receive medical treatment;

29. Whether CFMG treaters, including Nurse Kaupp, complied with CFMG policies and procedures in treating Mr. Pajas;

30. Whether Nurse Kaupp's treatment of Mr. Pajas met the medical standard of care;

31. The cause of Mr. Pajas's death.

32. CFMG is a for-profit corporation.

33. Defendants CFMG and the County had been directly informed since at least 2013

of problems with their opiate detoxification policies, procedures, and practices.

34. On May 23, 2013, a class action lawsuit filed against the County and CFMG alleged various constitutional violations in the conditions of confinement at the Jail, including, *inter alia*, detoxification procedures.

35. As part of the *Hernandez* litigation, the parties, including the County and CFMG, jointly retained Mike Puisis, D.O., as a neutral expert to evaluate the adequacy of the medical care being provided to inmates at the Jail.

36. On November 6, 2013, Dr. Puisis issued his Monterey County Jail Health Care Evaluation, concluding that Defendants' "policies and practices for providing medical care"—including Defendants' drug and alcohol withdrawal policies—"harmed inmates or placed them at great risk of serious harm."

37. To address the risk of harm from opiate withdrawal at the Jail, Dr. Puisis's report concluded that "[d]etoxification procedures at MCJ should be reviewed, policy should be clarified and practice should be strengthened so that detainees who are intoxicated and withdrawing from alcohol or other substances are protected and appropriately managed."

38. On April 15, 2015, a federal court granted a preliminary injunction against the County of Monterey and CFMG, relying in part on Dr. Pusis's evaluation, and making the following findings:

   a. Defendants' policies and procedure for chemically dependent inmates permit nurses "to diagnose chemical dependency. This is inappropriate. All patients identified as chemically dependent and thereby placed in detoxification should be diagnosed by a physician or mid-level provider."

   b. "In practice, nurses use a poorly written detoxification protocol which is inconsistently followed. This has the appearance, based on chart reviews, of nurses making up rules as they go along."

   c. "The role of physicians in [Defendants' detoxification] policy is not clear. The policy appears to allow nurses to manage withdrawal by virtue of using

a protocol which, in practice, is not strictly followed. The policy requires nurses consult with a physician for any one of 8 abnormal signs," however as of April 2015 this was not happening.

d.   As a result, alcohol and other drug withdrawal syndromes are managed by officers and nurses without physician supervision."

e.   Defendants' Sobering Cell policy, "does not specify who is responsible for placement of detainees in sobering cells and initiating detoxification. In practice officers do this which is not clinically appropriate as this assumes a diagnosis which physicians or mid-level providers should make."

f.   Defendants' "Sobering Cells-Custody's Role" policy, "directs officers to house persons in sobering cells deemed by custody to be intoxicated on alcohol or other drugs or a threat to themselves or others. ….The County's policy places the responsibility for determining whether an inmate should be placed in a sobering cell on deputies who "have no training for this function."

g.   Defendants' use of custody officers to "identify persons at risk for withdrawal, to evaluate persons who appear to be intoxicated, or to make medical decisions with respect to isolation for this purpose. . . . places detainees at risk for harm." *Id.* at 20.

39.   In the afternoon of January 19, 2015, Mr. Pajas was arrested in King City. for alleged "reckless driving" on his bicycle, transporting a controlled substance for sale, and resisting arrest.

40.   The CFMG medical staff noted that Pajas was to be placed on "opiate detox" and a specified series of medications to be taken throughout the following days.

41.   The "opiate detox protocol" includes a plan for treatment including medications for symptom management.  The standardized protocol also requires assessment by an RN every four hours and that vital signs be taken once per day.

42.    Pajas was placed in a "sobering cell" at approximately 4:17 a.m. on January 20th.

CFMG nursing staff assessed Mr. Pajas in the sobering cell and reported that he had vomited in the cell.

43. 15 CCR §1056 requires welfare checks of inmates housed in a sobering cell occur no less than every half hour.

44. Monterey County Sheriff's Office deputies complied with 15 CCR § 1056 31 times out of 32 welfare checks conducted on Mr. Pajas while he was under a sobering cell protocol.

45. The County's internal policies went over and above the requirements of 15 CCR § 1056 and required that deputies complete, and log welfare checks for sobering cells every 15 minutes.

46. During the time Mr. Pajas was in the sobering cell, multiple 15-minute welfare checks were not completed by deputies.

47. Mr. Pajas's cause of death was sudden cardiac death due to ventricular arrhythmia.

48. All other facts are disputed.

**c.** **Requests for Judicial Notice**

Defendant County intends to request that the Court take judicial notice of Title 15 of the California Code of Regulations.

Plaintiffs intend to request that the Court take judicial notice of the federal court decision *Hernandez v. County of Monterey*, 110 F. Supp. 3d 929 (N.D. Cal. 2015)

**3.** **Disputed Legal Issues.**

**a.** ***Plaintiffs' Claims:*** Plaintiffs will allege three constitutional claims against Defendants County of Monterey, CFMG and Christina Kaupp R.N., as well as a wrongful death claim against CFMG.

1. ***Fourteenth Amendment claim for failure to provide adequate medical care and failure to protect from harm***

The parties dispute whether the County, CFMG and Kaupp were deliberately indifferent to Mark Pajas's serious medical needs and failed to protect him from harm in violation of the Fourteenth Amendment.

***County and CFMG liability:*** The parties dispute Plaintiffs' claims against the County and CFMG for Defendants' failures to protect Mr. Pajas from harm, and failures to provide him medical care in violation of the Fourteenth Amendment.

The Fourteenth Amendment protects pretrial detainees from dangerous conditions of confinement, and obligates those who run jails to take reasonable measures to protect those confined within them. *Farmer*, 511 U.S. at 832; *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1070-73 (9th Cir. 2016) *see also Hydrick v. Hunter*, 500 F.3d 978, 994 (9th Cir. 2007) (rights of detainees under Fourteenth Amendment at least coextensive with those of prisoners under Eighth Amendment).

The Fourteenth Amendment also requires jail officials to provide pretrial detainees necessary and adequate treatment for serious medical needs. *Brown v. Plata*, 563 U.S. 493, 501-02 (2011); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Doty v. Cnty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994); *see Hydrick*, 500 F.3d at 994. A serious medical need is one which, without treatment, "could result in further significant injury or the unnecessary and wanton infliction of pain." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 2001). Heroin withdrawal is a serious medical need under the Fourteenth Amendment. *Gordon v. Cnty. of Orange,* 888 F.3d 1118, 1124-25 (9th Cir. 2018); *Hernandez*, 110 F. Supp. 3d at 948.

Jail officials who are deliberately indifferent to a serious medical need or substantial risk of serious harm to a pretrial detainee violate the Fourteenth Amendment. *Castro,* 833 F.3d at 1070. The Ninth Circuit evaluates Fourteenth Amendment claims solely under an objective deliberate indifference standard. *Gordon*, 888 F.3d at 1124-25 (applying objective standard to inadequate medical care claim); *Castro*, 883 F.3d at 1070 (applying objective standard to failure-to-protect claim). This objective deliberate indifference standard applies to both *Monell* and individual liability Fourteenth Amendment claims. *Gordon*, 888 F.3d at 1124-25.

The objective deliberate indifference standard asks whether "there was a substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the [official] did not take, thus causing the injury that plaintiff suffered?" *Castro*, 833 F.3d at 1070; *Gordon*, 888 F.3d at 1125. For a failure to protect or inadequate medical care claim, a pretrial detainee does not have to prove a jail official's state of mind or actual awareness of the level of risk. *Gordon*, 888 F.3d at 1124 & n.4; *see also Castro*, 833 F.3d at 1069 (no "state-of-mind requirement" independent of

that necessary to show violation of underlying federal right). It is sufficient that Defendants were on actual or constructive notice that the conditions created by their policies, procedures, and/or practices posed a substantial risk of serious harm, but did not take reasonable measures to address that risk. *Castro,* 833 F.3d at 1070-71*; see also Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248-49 (9th Cir. 2016). Moreover, a detainee need not establish that Defendants were aware of his specific needs, but, rather, that Defendants were on notice that their policies would pose a risk to someone in his situation. *Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1077-78 (9th Cir. 2013).

To establish *Monell* liability against the County and CFMG, Plaintiffs must show that: (1) "a direct causal link" between a County custom or policy and the deprivation of Mr. Pajas' constitutional rights to adequate medical care and/or protection from harm, and (2) "the custom or policy was adhered to with deliberate indifference to the constitutional rights of the jail's inhabitants." *See Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1075-76. "The custom or policy must be a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Castro*, 833 F.3d at 1075 (quotation marks and citation omitted).

***CFMG claims***: The elements of a pretrial detainee's Fourteenth Amendment claim against an entity defendant for deprivation of adequate medical care or failure to protect from harm are those set forth in *Monell* and its progeny. *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1247 (9th Cir. 2016) (citing *Montell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). A detainee must show (1) "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and (2) "demonstrate that the custom or policy was adhered to with deliberate indifference to the constitutional rights of the jail's inhabitants." *Castro*, F.3d at 1076-76. The deliberate indifference standard for municipalities is an objective standard. *Castro,* 833 F.3d at 1076. "[A]n objective standard applies to municipalities 'for the practical reason that government entities, unlike individuals, do not themselves have states of mind.'" *Mendiola-Martinez*, 836 F.3d at 1248 (quoting *Castro*, 833 F.3d at 1076). "This *Castro* objective standard is satisfied when 'a § 1983 plaintiff can establish that the facts available to city policymakers puts them on actual or constructive notice that the particular omission [or act] is substantially certain to result in the violation of the constitutional rights of their citizens.'" *Id.* at

1248-49 (quoting *Castro*, 833 F.3d at 1076 (alteration in original).

***Kaupp's liability*:** Additionally, the parties dispute Christina Kaupp R.N.'s, individual liability under the Fourteenth Amendment for failing to provide Mr. Pajas with adequate medical care and failing to protect him from harm.

Jail officials who are deliberately indifferent to a serious medical need or substantial risk of serious harm to a pretrial detainee violate the Fourteenth Amendment. *Castro*, 833 F.3d at 1070. The Ninth Circuit evaluates Fourteenth Amendment claims solely under an objective deliberate indifference standard. *Gordon*, 888 F.3d at 1124-25 (applying objective standard to inadequate medical care claim); *Castro*, 883 F.3d at 1070 (applying objective standard to failure-to-protect claim). This objective deliberate indifference standard applies to both *Monell* and individual liability Fourteenth Amendment claims. *Gordon*, 888 F.3d at 1124-25.

The objective deliberate indifference standard asks whether "there was a substantial risk of serious harm to the plaintiff that could have been eliminated through reasonable and available measures that the [official] did not take, thus causing the injury that plaintiff suffered?" *Castro*, 833 F.3d at 1070; *Gordon*, 888 F.3d at 1125. For a failure to protect or inadequate medical care claim, a pretrial detainee does not have to prove a jail official's state of mind or actual awareness of the level of risk. *Gordon*, 888 F.3d at 1124 & n.4; *see also Castro*, 833 F.3d at 1069 (no "state-of-mind requirement" independent of that necessary to show violation of underlying federal right).

To establish liability against Nurse Kaupp for deprivation of adequate medical care, and failure to protect from harm, Plaintiffs must establish "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved – making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries." *Gordon*, 888 F.3d at 1125 (medical care claim); *see also Castro*, 833 F.3d at 1071 (failure to protect claim).

## 2. *First and Fourteenth Amendment deprivation of substantive due process*

The parties dispute whether Defendants violated the substantive due process rights of Plaintiffs

Rosemary Lopez, Yvette Pajas, Mark Pajas, Janel Pajas, and Xavier Pajas in their familial relationships with Mark Pajas, Sr. Plaintiff must establish that the County and CFMG Defendants deprived Plaintiffs of this interest through conduct that shocks the conscience. *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013); *see also Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) ("official conduct that 'shocks the conscience' in depriving [individuals] of that interest is cognizable as a violation of due process"). "A prison official's deliberately indifferent conduct will generally 'shock the conscience' so long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Lemire*, 726 F.3d at 1075; *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998) (when jail officials have "extended opportunities to do better" that "are teamed with protracted failure even to care, indifference is truly shocking.").

**Kaupp's Claims:** The elements for a pretrial detainee's Fourteenth Amendment claim against an individual for deprivation of adequate medical care or failure to protect from harm are: "(I) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious; and (v) by not taking such measures, the defendant caused that plaintiff's injuries." *Gordon v. Cty of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (medical care claim); see also *Castro*, 833 F.3d at 1071 (failure to protect claim). "With respect to the third element, the defendant's conduct must be objectively unreasonable." *Gordon*, 888 F.3d at 1125 (quotation marks and citation omitted).

### 3. *Claim for wrongful death*

Plaintiffs' claim for wrongful death against CFMG is disputed. The parties dispute whether CFMG is liable for the wrongful death of Mark Pajas. Plaintiffs contend that the unconstitutional failures to protect Mr. Pajas from harm and to provide him adequate medical care constituted (1) a wrongful act or neglect that (2) caused (3) the death of Mark Pajas, the existence of which establishes liability for wrongful death. *See* Cal. Civ. P. Code § 377.60; *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 390 (1999); *Lattimore v. Dickey* 239 Cal.App.4th 959, 968 (2015).

The County contends that Plaintiffs cannot establish a direct causal link between any policy of the County and/or act or omission of a County employee and Mr. Pajas' death. The County contends Plaintiffs cannot establish any policy or custom of the County was constitutionally deficient. The County contends Plaintiffs cannot establish that the County adhered to a policy or custom with deliberate indifference to any of Mr. Pajas' constitutional rights.

**4.    Estimate of Trial Time.**

The parties estimate that this case will take 10-12 days of trial.

**5.    Trial Alternatives and Options.**

    **a.    Settlement Discussion.**

On August 11, 2017, the parties participated in a settlement conference with United States Magistrate Judge Nathanael Cousins. The matter did not resolve. (Dkt. No. 145).

On September 6, 2018 this court referred the case to Judge Cousins for further settlement conference. (Dkt. No. 173). Following the court's order on summary judgment, the parties have scheduled a further settlement conference with Judge Cousins on December 11, 2018. (Dkt. No. 177).

    **b.    Amendments or Dismissals.**

Plaintiffs do not anticipate making any amendments to the pleadings or dismissals.

    **c.    Bifurcation and Separate Trial Issues.**

Defendants CFMG and Christina Kaupp request that the issue of punitive damages be bifurcated and tried separately from the other issues in the case.

On motion of any defendant, evidence of that defendant's net worth or its profits from the allegedly-wrongly conduct is inadmissible until plaintiff has first proved a *prima facie* case of liability for punitive damages ("malice, oppression or fraud"). [See *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.* (D KS 1990) 130 F.R.D. 149, 152]

//
//
//
//
//

## 6. **Binding Effect of the Joint Pretrial Statement and Order**

*The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.*

Dated: November 21, 2018                    Respectfully Submitted,

HADSELL STORMER & RENICK LLP


By:    /s/ - Lori Rifkin
          Dan Stormer
          Lori Rifkin
          Cindy Pánuco
Attorneys for Plaintiffs


*The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.*

Dated: November 21, 2018                    CHARLES J. McKEE
                                      County Counsel


By:    /s/ - Michael R. Philippi
          MICHAEL R. PHILIPPI
Attorneys for Defendant County of Monterey


*The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues of fact and law remaining to be litigated, this order shall supplement the pleadings and govern the course of trial of this action, unless modified to prevent manifest injustice.*

Dated: November 21, 2018                    SHEUERMAN, MARTINI, TABARI, ZENERE & GARVIN

By:    /s/ - Alan L. Martini
          Alan L. Martini
Attorneys for Defendants California Forensic Medical
Group, Inc. and Christina Kaupp

# [PROPOSED] ORDER

The Court, having reviewed the above JOINT PRETRIAL STATEMENT AND ORDER and good cause appearing, enters this Joint Pretrial Statement and Order as an Order of the Court, as modified by subsequent Orders of the Court.

**IT IS SO ORDERED.**

Dated: February 6, 2019

_Beth Labson Freeman_
Honorable Beth Labson Freeman
United States District Judge